Marta **BROSNAN**, Appellant,

v.

Joseph **BROSNAN**, Appellee.

No. S–3629.

Supreme Court of Alaska.

Oct. 4, 1991.

---

Allan Beiswenger, Robinson, Beiswenger & Ehrhardt, Soldotna, for appellant.

William T. Ford, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Appellant Marta Brosnan challenges several aspects of the superior court property division in the divorce proceeding between her and appellee Joseph Brosnan. Marta's main objection concerns the court's decision to value the marital property at the time of separation rather than the time of divorce. She also challenges the court's valuation of certain property and the exclusion of certain property from the division of assets. Finally, Marta claims that the court erred in not awarding her full costs and attorney's fees.

### I.

Marta and Joseph were married in Costa Rica in 1966. They moved to Alaska permanently in the late 1960's, and built a house for the family in Homer in 1971. During the marriage, Marta devoted most of her time to raising the couple's four children. Joseph worked at various jobs, though his primary job was as a commercial fisherman in Bristol Bay.

The family moved back to Costa Rica in October 1986 due to the illness of Marta's father. They had purchased a half interest in a ranch there several years earlier. The parties had experienced marital problems for several years at this point, and they separated in Costa Rica in April of 1987.

In addition to the Homer residence, the couple had acquired several other large assets by the end of the marriage. In 1977, Joseph was awarded a Limited Entry Permit for the Bristol Bay Drift Fishery. At the time of separation the permit was worth about $140,000. By the time of the divorce in 1989, its value had appreciated to roughly $240,000. In 1980, Joseph had bought a fishing boat called "The Judgment." Unlike the fishing permit, the value of the boat decreased between the time

of separation and the time of divorce, going from $90,000 to $80,000. After the separation, Joseph sold some herring nets and a skiff associated with the boat for $10,000.

In approximately 1983, Joseph had lent $5,000 to Mario Torres, Marta's brother-in-law. At the time of the trial, the loan had not been repaid. Marta testified that she had advised Joseph against making the loan and that she had no expectation that the loan would ever be repaid. Joseph's testimony was somewhat contradictory on this point. At one point he testified that the note "wasn't collectible." Later, he testified that his chances of recovering on the loan were zero, but Marta's chances were "much better." The highest quantified estimate he ever gave on Marta's chances of recovering on the loan was 10%.

In making its division of the property, the trial court valued the property as of the time of separation rather than divorce, concluding that there had been no sharing of assets and no "joint enterprise" between the parties since the separation. The trial court awarded to Marta the property in Homer ($90,000), the Costa Rica ranch ($7,000),[1] and the outstanding Torres loan ($5,000). To Joseph, the court awarded the Limited Entry Permit ($140,000) and "The Judgment" and gear ($90,000). The court also required Joseph to assume roughly $83,000 of the couple's debts. Since the court divided the property on a 55–45 basis, with 55% going to Marta, Joseph was ordered to pay Marta approximately $39,000 over five years. Finally, the court ordered Joseph to pay $2,092.75 of Marta's costs and fees. This amounted to slightly over 50% of her total costs and fees of $3,885.50.

## II.

### A. *Valuation of the Marital Assets*

■ Marta argues that the trial court erred by valuing the marital assets as of the time the parties separated instead of at the time of divorce. The main significance of this difference is the appreciation of the Bristol Bay fishing permit, which amounted to roughly $100,000 between the separation in April of 1987 and the divorce in June of 1989.

At the time the superior court issued its decision, it did not have the benefit of our recent decision in *Ogard v. Ogard,* 808 P.2d 815 (Alaska 1991). In *Ogard,* the trial court awarded the husband a four-plex valued as of the date of separation. On appeal, the husband argued that this was unfair since the property had fallen in value by the time of trial. We agreed that the interests of accuracy and fairness require that "[o]rdinarily ... the date of valuation [of marital assets] ... should be as close as practicable to the date of trial." *Id.* at 819. *Ogard* is directly on point.[2] We therefore reverse the trial court's valuation of the marital assets and remand with directions that the marital property be valued as of the time of trial.[3]

### B. *The Torres Note*

■ Marta contends that, given the evidence at trial, the superior court erred in assigning a value of $5,000 to the Torres note. This is a factual determination which will be disturbed only if there is clear error. *Nelson v. Jones,* 781 P.2d 964, 970 (Alaska 1989) (citing *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988), *cert. denied,* —— U.S. ——, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990)). We deem a factual finding to be clearly erroneous "when we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." *Martens v. Metzgar,* 591 P.2d 541, 544 (Alaska 1979).

■ From the evidence in the trial record, it is highly unlikely that the Torres note will ever be repaid. Marta testified that she had no expectation that the loan

---

1. The ranch was sold in 1987, and Marta kept the proceeds.

2. The fact that *Ogard* involved depreciation as opposed to appreciation as in this case is irrelevant.

3. As a result of using the time-of-trial values, the superior court may find it necessary to make changes in the distribution of the marital property in order to ensure that the 55–45 division is maintained.

would ever be repaid. Joseph's testimony was not consistent on this point, but the most favorable estimate he gave was that Marta had a 10% chance of recovering the loan.[4] From the record, we are firmly convinced that the note's actual value is significantly less than its face value. Hence, assigning the note its face value was clear error. On remand, the court should assign the Torres note a value no greater than 10% of its face value.[5]

### C. *Other Property*

■ Marta next argues that the trial court erred in not including certain other items in the property division. Specifically, Marta claims that herring nets, a skiff, a set of walrus tusks, and various other items of personal property were omitted from the property division. We review a trial court's determination of what property is available for distribution for abuse of discretion. *Moffitt* 749 P.2d at 346.

■ The trial court valued the boat at $90,000 at the time of separation, and did not mention the nets and skiff although they may have been encompassed within that figure. The boat should have been valued as of the time of trial. The $10,000 for which Joseph sold the nets and skiff between the date of separation and time of trial should have been included in the court's disposition. On remand, the court should clarify these aspects of the property division.

■ As for the trial court's omission of the value of the walrus tusks and the items of personal property from the distribution, we find no error. Although Joseph initially valued the tusks at $2,000, this was before he learned that he could not sell them. It was not clearly erroneous to assign the tusks a value of zero. Nor did the trial court err in omitting various items of personal property from the property division. The net marital assets totalled roughly $250,000. The trial court has broad discretion in determining the appropriate property division, and failure to include $1,000 worth of assets out of net marital assets of $250,000 was not clearly unjust. *Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985) (per curiam).

### D. *Attorney's Fees*

■ Marta's costs and fees totalled $3,885.50. The court ultimately awarded her $2,092.75 as partial compensation for these expenses. She contends that the court erred by not awarding her full costs and attorney's fees. We will not disturb the trial court's award of attorney's fees absent an abuse of discretion. *See Nelson,* 781 P.2d at 971.

■ Marta correctly points out that the parties' relative economic situations and earning capacities are relevant considerations in awarding attorney's fees. *Streb v. Streb,* 774 P.2d 798, 803 (Alaska 1989). Nevertheless, we cannot say that the court's award of over 50% but less than 100% of Marta's actual costs and fees was "arbitrary, capricious, manifestly unreasonable, or [the result of] an improper motive." *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987) (quoting *Brooks v. Brooks,* 733 P.2d 1044, 1058 (Alaska 1987) (quoting *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979))). There was no abuse of discretion. *Nelson,* 781 P.2d at 971. We therefore affirm the trial court's award of costs and fees.

---

**4.** Joseph's testimony about Mario's alleged statement that he would repay Marta, when viewed in context, does not provide strong support for assigning the Torres note its face value:

> Q  Well, let's talk about the $5,000 loan. You've admitted that the chances of recovering that are virtually zero?
> A  I don't know.
> Q  Well, didn't you testify that for you it's zero, for her it's something less than 5% or something to that—
> A  She called Mario, and Mario said that he would pay the loan to her. *I don't know*

*whether that means that he will or he won't, but that's—I don't know that.*

(Emphasis added). From this exchange, it appears that even Joseph did not place much hope on Mario's statement. In light of this and all the other evidence in the record, repayment seems highly unlikely.

**5.** The 10% figure mentioned by Joseph at trial presumably referred to Marta's chances of recovering the loan as of the time of trial. Thus, the 10% figure is in accordance with *Ogard.*

The decision of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED.