Kenneth M. DUFFUS, Appellant,

v.

Juliann N. DUFFUS, Appellee.

No. S–7583.

Supreme Court of Alaska.

Feb. 28, 1997.

Allen M. Bailey, Law Offices of Allen M. Bailey, Anchorage, for Appellant.

Donald M. Johnson, Law Offices of Donald M. Johnson, P.C., Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. INTRODUCTION

Kenneth Duffus appeals the superior court's denial of a motion to modify a child custody order. We affirm the. decision below and remand the case for amendment of the order's provision regarding disclosure of crucial information to the children.

## II. FACTS AND PROCEEDINGS

Kenneth and Juliann Duffus were married in 1978. They have two children, Elizabeth (Beth), born in 1983, and Michelle, born in 1987. Kenneth and Juliann were divorced in 1990. They agreed that Juliann would have sole legal and primary physical custody, while Kenneth would retain visitation rights.

In July 1994 Juliann's job was eliminated. In October she accepted a job offer in Colorado and moved there the following month, taking the children with her. Since the move, Beth has expressed a desire to live in Alaska, while Michelle would rather spend the school year in Colorado and vacations in Alaska. However, the custody investigator testified that both children truly wish to maintain the status quo.

Following her move to Colorado, Juliann has canceled or shortened all of Kenneth's visits. A visit planned for Thanksgiving 1994 was canceled by Juliann.[1] As a result, Juliann was fined and ordered to return the children to Alaska by December 18 for a Christmas visit. Juliann did bring the children to Anchorage, but cut the visit from fifteen days to six days. In March 1995 Juliann sent Kenneth a letter stating she would not allow the children to visit him that summer unless he secured a court order for their return. Juliann eventually brought the children to Alaska for their visit, but she delayed that visit from June 15, as required by court order, to July 4. Throughout this period, Kenneth refused to discuss any visit arrangements with Juliann. Indeed, since the move the parties have demonstrated a near-total inability to communicate with each other in any meaningful way.

In the course of visitation disputes, Kenneth discovered that Doug Glynn, Juliann's apparent paramour, had become involved in the children's lives. Glynn was convicted of molesting several male children over a decade ago. He has shown unusually positive signs of reform by admitting his crimes, cooperating fully with treatment efforts, and seeking help on his own initiative whenever he fears a relapse. However, Glynn is not

---

1. Kenneth refused to discuss the visit, and simply ordered Juliann to put the children on a plane at a time he designated. Juliann refused to comply because she felt the children would miss too many days of school.

"cured," and his probation order prohibits him from being alone with any child.

Glynn is present in Juliann's home every day after work until the family goes to bed. He answers the telephone and has received certified mail at Juliann's home. He also has spent brief periods of time alone with the children. For instance, on several occasions, the children answered Juliann's telephone and passed it to Glynn after stating that their mother was not home. Private investigators also observed Glynn and the children alone for several brief periods. Juliann has not told the children of Glynn's past.

Following Juliann's move and the visitation disputes, Kenneth moved to modify custody. The superior court denied the motion. This appeal followed.

## III. DISCUSSION

### A. Standard of Review.

■ "This court will overturn a lower court's resolution of a custody issue[2] only when there is an abuse of discretion or where there are clearly erroneous findings of fact." *Bird v. Starkey*, 914 P.2d 1246, 1248 (Alaska 1996) (citations omitted) (when trial court made no findings whatsoever, case was remanded for "findings of fact which address all relevant criteria of AS 25.24.150(c)"). "We deem a factual finding to be clearly erroneous when we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding." *Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991) (citation omitted). A trial court will be found to have abused its discretion if it "failed to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination." *Bird*, 914 P.2d at 1248 (citations omitted). Hence, a trial court is required to make findings on the various statutory factors which are sufficient to make

the basis of its decision susceptible to review. *Id.*

Kenneth raises a number of discrete issues on appeal, many of which concern the trial court's alleged failure to make findings addressing "all relevant criteria of AS 25.24.150(c)." However, Kenneth's primary argument concerns the presence of Glynn· in the children's lives, and the potential threat which Kenneth contends Glynn presents.[3] None of Kenneth's claims carry sufficient weight to compel reversal.

### B. The Trial Court's Findings Adequately Address All Relevant Statutory Criteria.

■ Under *Bird*, the trial court was required to make "findings of fact which address all relevant criteria of AS 25.24.150(c)." *Bird*, 914 P.2d at 1249. Alaska Statute 25.24.150(c)(6) directs the court to consider "the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent." *See Pinneo v. Pinneo*, 835 P.2d 1233 (Alaska 1992)(custodial parent's efforts to sever other parent's relationship justified custody change). Kenneth argues that since the court's written order lacks an express finding on this factor, the court's findings do not adequately address this issue.

This contention is contradicted by the record. While trial courts are encouraged to state all findings in their written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review. The court's oral order included findings that "both parents' conduct toward each other is outrageous ... Each of these parents fail in their communication with each other, communication which is absolutely necessary for their children's well being ... Neither one of them

---

**2.** The court will modify a child custody award if "a change in circumstances requires the modification of the award and the modification is in the best interests of the child." AS 25.20.110. Once a party demonstrates a substantial change in circumstances, as the parties .concede has occurred here, the court must consider "whether, in light of such changed circumstances, it is in the child's best interest to alter the existing cus-

todial arrangement." *Long v. Long,* 816 P.2d 145, 150 (Alaska 1991) (citations omitted).

**3.** Kenneth's motion was originally motivated by the disputes surrounding visitation in the wake of Juliann's move. However, the focus of his claim shifted after proceedings began and Kenneth learned of Glynn's involvement with Juliann.

respect their children well enough ... to communicate with the children's other parent ... [and] the victims ... are the children." The court determined that both parents were at fault for the visitation problems, and that the only way to resolve the matter was "to order in minute detail any and all visitation and communication that the other parent is permitted or allowed." Moreover, the written order directly addressed this issue by providing detailed visitation guidelines. Taken together, the court's oral findings, as effectuated by its written order, are adequate to address the statutory factor and clarify the basis for the court's decision on this issue.

In addition, Kenneth notes that under AS 25.24.150(c)(3), the trial court was required to consider "the child's preference if the child is of sufficient age and capacity to form a preference." *See Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996) (statutory standard is meant to give weight to child's wishes). Kenneth argues that the court failed to make the required finding.

■ This contention also lacks merit. The court's written order noted that "the children are of sufficient age to formulate and express a preference and have done so with the custody evaluator." While this statement in and of itself does not outline or weigh the children's preferences, the statement adopts the conclusion of the custody investigator. The investigator does identify a preference on the part of both children to spend school years with their mother and summers with their father. The court followed this preference. Hence, the trial court's adoption of the investigator's conclusion adequately addresses the relevant statutory factor.

### C. *The Trial Court Did Not Err in Refusing to Modify Custody in Light of Glynn's Presence.*

■ The heart of Kenneth's appeal is his contention that the trial court's finding that Glynn does not constitute a threat to the physical or emotional well-being of the children was clearly erroneous. While Kenneth's concerns in this regard are understandable, we conclude that the trial court did not err in resolving this issue.

■ There is no bright line rule against the involvement of any specific category of persons in a household which includes children. In making a custody determination, the court considers only "facts directly affecting the child's well-being." *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985)(absent any showing that mother's lesbian status adversely affected the child, mother's lesbian status had no bearing on custody decision). Kenneth has not demonstrated that Glynn presents a threat to the children's physical or emotional well-being, and therefore his argument fails.

The trial court heard substantial evidence indicating that Glynn does not present a physical threat to the children. Glynn's rehabilitation efforts have been exemplary. He has admitted his crimes, completed the state's treatment program, and sought help on his own initiative when he feared relapses might occur. Glynn's parole officer told the custody investigator that Glynn was one of only two out of ninety sexual offenders she had supervised who appeared to be "likely not to re-offend." While Glynn has broken probation by being alone with the children for brief periods, the investigator testified that the breach was insignificant, and that Glynn generally displayed great caution regarding probation. None of this evidence was refuted by Kenneth.

Moreover, the trial court took steps to ensure that Glynn remains in remission. The court's order requires that Glynn establish a support system in Colorado, and that he provide written notice, within six months of the court's decision, that such a system was in fact in place. These requirements provide an additional safeguard for the children by ensuring that Glynn's rehabilitation efforts will continue if he remains part of the children's lives. The court also required Juliann to provide sixty days' written notice before Glynn begins to reside with her, or if the two of them plan to marry.

In the absence of any evidence that Glynn presents a threat to the physical well-being of the children, we cannot form "a definite

and firm conviction on the entire record that a mistake has been made" in finding that Glynn does not pose a threat to the physical well-being of the children. *Brosnan,* 817 P.2d at 480. In light of that finding, and the broad discretion with which the superior court is vested, the court's resolution of this issue was not an abuse of discretion. *Id.*

Kenneth also argues that Glynn's presence in the children's lives constitutes an emotional threat to the children, who will be hurt by the revelation that their mother has held back such important information from them. The court found that the damage caused by secrecy does not militate in favor of a custody change, since this harm would occur no matter which parent had custody. No evidence contradicting that finding was presented. Again, reviewing the entire record, we cannot form a definite and firm conviction that a mistake has been made. The finding is not clearly erroneous. Moreover, the court's conclusion is logically sound, since no matter where the children are living, they will know their mother withheld crucial information when and if they learn of Glynn's past. In addition, the court acted to ensure that the revelation of Glynn's past will cause as little emotional harm as possible, by requiring that "[i]f Mr. Glynn is to remain involved with [Juliann, she] shall, within three months of the date of this order obtain the advice of a counselor ... as to how to prepare the children for revelation of Mr. Glynn's past." The court's resolution of this issue also was not an abuse of discretion.

■ We note, however, that this provision does not clearly require that the children be informed of any restrictions on Glynn's activities with them. In our view, the superior court on remand should modify paragraph 7 of the custody and visitation order to address the issue of informing the children that Glynn is not to be alone with them (as required by his probation), and that they should report inappropriate behavior by Glynn or any other person to some responsible adult. Further, the court should require that both the father and the court be advised of the substance of the information imparted to the children on this topic.

## IV. CONCLUSION

The trial court made findings which adequately addressed "all relevant criteria of AS 25.24.150(c)." In addition, the court's finding that Glynn does not pose a threat to the well-being of the Duffus children was not clearly erroneous in light of the unrefuted evidence supporting that determination. Lastly, the superior court found, and upon its findings, concluded that

> [t]he only significant change that has occurred since the original custody order was entered bearing on the best interests of the children is the relationship that has developed between plaintiff and Mr. Glynn which the court has discussed above, and the concerns raised by the custody evaluator and shared by the court can be resolved in the Custody and Visitation Order which the court will enter.

We conclude that the superior court's denial of the motion to modify custody was not an abuse of discretion. Accordingly, the decision of the superior court is AFFIRMED. The case is REMANDED for modification of the order as specified above.

FABE, Justice, with whom EASTAUGH, Justice, joins, concurring.

Although I agree with the result reached by the court, I write separately to articulate my differences with the court's reasoning. As the dissenting opinion makes clear, the court must look to the best interests of the child in modifying existing custodial arrangements. AS 25.20.110(a). While the court's opinion notes this standard in a footnote, it focuses primarily on whether Glynn represents a threat to the children. This focus suggests too high a threshold; even in the absence of a physical or emotional threat, a child's best interests could favor a modification of custody arrangements. As the dissent again correctly states, the court must also examine any potential effect on the children's emotional and psychological well-being of "the frequent presence in their home of a man whom they know to have repeatedly

molested children in the past," especially in "situations where they are alone with Glynn."[1] Dissent at 783.

However, I do not agree with the dissent that these concerns for the children's well-being require a remand for further findings after disclosure of Glynn's past to the children. The superior court, especially in light of the custody investigator's report and recommendations, crafted a balanced solution by ordering that Juliann give sixty days notice if Glynn plans to move into her home or the two of them plan to marry. This provides the opportunity for the court to review the matter and make any further provisions for the girls' emotional safety that may become necessary. The court's opinion further improves upon this solution by requiring that the children be informed that Glynn is not to be alone with them and that they should report any inappropriate behavior. Should Glynn begin to live in the household with the children, this would constitute a change in circumstances that would justify a new inquiry into their best interests. If the children express a preference for living with their father after the disclosure required by the court's opinion, this shift in preference would also constitute a change of circumstances justifying a new best interests analysis.

In summary, my difference with the court's opinion is primarily in emphasis. I believe that the court's analysis should be couched more explicitly in terms of the children's best interests. My difference with the dissenting opinion is primarily in timing. While Justice Rabinowitz would prefer a second best interests analysis prior to a resolution of the custody dispute, I do not think that this is necessary since a change in the children's preferences would automatically trigger renewed consideration of their best interests. For these reasons, I concur in the court's opinion.

RABINOWITZ, Justice, dissenting.

The standard which governs a motion to alter existing custodial arrangements is the best interests of the child. *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991). Without any awareness of Glynn's past conduct or present status, Beth and Michelle are spending significant amounts of time, some of it alone, with a convicted child molester who is not cured and therefore is prohibited by probation order from being alone with any child.[1] I do not believe that this situation is in the best interests of the Duffus children.

As the court recognizes, the mother's involvement with Glynn does not necessarily require that the Duffus girls be removed from her custody. Indeed, "[t]here is no bright line rule against the involvement of any specific category of persons in a household which includes children. In making a custody determination the court considers only 'facts directly affecting the child's well-being.'" Op. at 780. In my view, the superior court could not adequately determine how Glynn's involvement in the Duffus children's lives would affect their well-being until the girls were apprised of the circumstances surrounding his past antisocial conduct and the terms of his current probation order. Accordingly, the best interests of Beth and Michelle cannot be meaningfully evaluated until this extremely relevant information is conveyed to them, and the impact of such disclosure on the two minor children is assessed.

The court's reliance on *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985), holding that lesbian status has no bearing on a custody decision, to support its conclusion is misplaced. At stake here is more than Glynn's

---

1. I also agree with the dissent that the issue before the court is not Glynn's status as a treated child molester, but the nexus between his status or conduct and the children's well-being. Dissent at 782–83. The trial court understood this nexus and took it into account.

1. As stated in the court's opinion,
   Glynn was convicted of molesting several male children over a decade ago.... Glynn is not

"cured," and his probation order prohibits him from being alone with any child.
Glynn is present in Juliann's home every day after work until the family goes to bed.... He also has spent brief periods of time alone with the children.... Juliann has not told the children of Glynn's past.

*status* as a treated child molester.[2] The question, rather, given the best interests standard which governs custody determinations, is whether the Duffus children will feel safe and secure in an environment in which Glynn is frequently present, at times without the presence of other adults. If Beth and Michelle—with full awareness of the circumstances—do not psychologically or emotionally feel safe and secure in Glynn's presence, the home environment is unlikely to be one in which the girls' well-being will be served. This is true even if Glynn does not pose any actual danger to the children.

This court's previous cases require a reasonable nexus between the status or conduct in question and the well-being of a child. They do not require that the child be in actual danger, the standard impliedly imposed by the superior court and affirmed by the court's opinion.[3] As we stated in *S.N.E.*:

> When a court determines the best interests of the child under the changed circumstances doctrine, the scope of judicial inquiry is limited to facts directly affecting the child's *well-being*. . . .

> For example, that a mother is living with another man in an adulterous relationship does not justify denying her custody ab-

Op. at 779.

2. As Glynn's probation officer admits, "His sexual urges towards minor males have diminished from the time of his offense, but have not been entirely eliminated. This is consistent with what other therapists have reported, insofar as there is no 'cure.' "

3. As stated in the court's opinion:

> The heart of Kenneth's appeal is his contention that the trial court's finding that Glynn does not constitute a threat to the physical or emotional well-being of the children was clearly erroneous. While Kenneth's concerns in this regard are understandable, we conclude that the trial court did not err in resolving this issue.

> . . . .

> In the absence of any evidence that Glynn presents a threat to the physical well-being of the children, we cannot form "a definite and firm conviction on the entire record that a mistake has been made" in finding that Glynn does not pose a threat to the physical wellbeing of the children.

Op. at 780–81.

4. The superior court's order provides:

sent any indication of *adverse effects* on the child. Nor does bearing children out of wedlock or instability in relationships warrant a custody change where the parent's conduct does not *adversely affect the child* or the mother's parenting abilities. Even the mental health of the custodial parent is "relevant only insofar as it has or can be expected to *negatively affect the child.*"

*S.N.E.*, 699 P.2d at 878 (footnote and citations omitted, emphasis added).

It is reasonable to believe that Beth and Michelle might be adversely affected by the frequent presence in their home of a man whom they know to have repeatedly molested children in the past. Moreover, the children's emotional and psychological well-being might well be affected in situations where they are alone with Glynn. Since the superior court made its determination as to custody before the children were made aware of Glynn's past conduct and present status, one can only speculate as to the revelation's effect on the Duffus girls. I thus conclude that the superior court abused its discretion in making what is meant to be a best interests determination before it was in a position to ascertain the impact of disclosure on the children.[4]

> If Mr. Glynn is to remain involved with the plaintiff, plaintiff shall, within three months of the date of this order obtain the advice of a counselor or other expert in the field as to how to prepare the children for revelation of Mr. Glynn's past and of the best way to integrate him into the family unit without threat to the children or him.

This provision seems to contemplate the possibility that the revelation of Glynn's condition could potentially have adverse consequences on Beth and Michelle, and seeks to mitigate those consequences. However, the order does not require Juliann to disclose the information, but is simply reactive to the likely possibility that the girls will somehow discover it for themselves. This in itself is problematic. Whatever threat Glynn's condition poses to the children's emotional and physical well-being could be addressed, at least in part, by Beth and Michelle being made aware that they are not to be alone with Glynn, according to the terms of his probation, and that certain behavior on Glynn's part should immediately be reported if it occurs. Given that these conditions have not been imposed, I agree with the court's decision to remand this matter to the superior court for modification of the relevant provision.

Moreover, I believe that the superior court's mandated consideration of the children's preference was inadequate, given the lack of information available to Beth and Michelle when they "chose" to live with Juliann. Because the children did not know of Glynn's past or current treatment status, they could not have expressed an informed preference as to custody arrangements. *See* AS 25.24.150(c)(3); *Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996).

As the superior court recognized and the court's opinion affirms, the children are "of sufficient age to formulate and express a preference" as to custody arrangements. The superior court was required to consider these preferences. To the extent that they were based on flawed or severely limited information, the stated preferences of Beth and Michelle should not have provided a basis for the custody decision.[5]

The appropriate time at which to make a determination of the Duffus children's best interests would be after the passage of a reasonable time following disclosure of Glynn's past conduct and present condition. Admittedly on the record we do have, the superior court might reasonably conclude that remaining in Juliann's custody is in the best interests of the children. However, for the reasons discussed in this separate opinion, I believe that the superior court erred in reaching its custody determination based on the evidence before it. Rather, the custody issue should be remanded to the superior court for further findings after disclosure has been made to Beth and Michelle of Glynn's past conduct and present condition, and a reasonable period has elapsed within which to assess the impact on their well-being of such disclosures.

---

5. *See* John P. McCahey, *Child Custody & Visitation Law and Practice* § 10.08[3] (1993) ("a frequently recurring concern [in assessing the weight given a child's preference] is whether or not a child is able to express an *informed*, intelligent and sound preference") (emphasis added).