Michael PARK, Appellant,

v.

Tara PARK, Appellee.

No. S–8700.

Supreme Court of Alaska.

Sept. 3, 1999.

William T. Ford, Anchorage, for Appellant.

Tara Park, pro se, Anchorage.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

Michael Park appeals a superior court order granting custody of his daughters to Tara Park, their mother. Under AS 25.24.150(c), a court determining child custody must consider a number of specified factors relating to the best interests of the child. Here, the superior court expressly addressed only one of these statutory factors in its findings and did not clearly indicate that it had considered any others. Because the court's findings are incomplete and do not fully explain its decision, we hold that they fail to comply with AS 25.24.150(c). We therefore remand for findings considering all relevant statutory factors.

## II. FACTS AND PROCEEDINGS

Tara and Michael Park were married in Anchorage in 1988 and had two children together: Lacey, born March 6, 1990, and Baille, born May 20, 1991.

As early as 1995, Tara and Michael decided to leave Alaska in June 1996 so that Michael could work for his father's oil company in Texas. In anticipation of the move, they placed their house on the market, began selling furniture and other possessions, and

bought airline tickets to Texas in June. But in late May Michael discovered that Tara was having an affair with another man; on May 25, without informing Tara, he took the children and flew to Texas.

In June 1996 Tara filed for divorce, requesting sole legal and physical custody of the two children. She also moved for interim custody of both children. Michael opposed Tara's efforts to obtain permanent and interim custody, asking the court to award him legal and physical custody of both children.

In September 1996 the superior court awarded interim custody to Michael but provided for regular telephone contact between Tara and her daughters and "generous visitation" rights in the event Tara was able to visit Texas.

The parties ultimately tried the issue of permanent custody in April 1998, twenty months after the court awarded interim custody to Michael. In the interim, Tara filed several motions requesting visitation with the children in Alaska and, on one occasion, in Louisiana. Michael opposed Tara's motions, insisting that the interim custody order called for all visitation to occur in Texas. The court nonetheless granted each of the motions, ordering Michael to make the children available for out-of-state visits with Tara over Christmas vacation in 1996 and during spring, summer, and Christmas vacations in 1997. Michael failed to comply with the order allowing visitation over the 1997 Christmas holidays, claiming that the court issued it too late to enable him to make airline reservations for the children's travel to Alaska.

In January 1998, several months before trial, custody investigator Susan Arth filed a custody investigation report. Arth recommended that Tara be awarded sole legal and primary physical custody of the children, primarily because she believed—based in large part on Michael's sudden and unannounced removal of the children to Texas, his consistent opposition to Tara's visitation motions, and his failure to comply with the 1997

Christmas visitation order—that he would not be cooperative in permitting visitation.

At the conclusion of trial, the superior court announced its decision. Focusing on Michael's removal of the children from Alaska and his resistance to Tara's requests for visitation, the court agreed with Arth's recommendation and awarded Tara sole legal and primary physical custody of Lacey and Baille. The court subsequently issued written findings and conclusions confirming its oral ruling. Michael appeals.

### III. DISCUSSION

#### A. Standard of Review

■■■ We will reverse an award of child custody if we find that the trial court abused its discretion.[1] A court abuses its discretion if it issues a custody decision without considering all statutorily mandated factors that are relevant to the case at hand.[2]

#### B. Adequacy of the Superior Court's Findings under AS 25.24.150(c)

In challenging the award of custody to Tara, Michael argues that the superior court's findings are inadequate under AS 25.24.150(c). We agree.

Alaska Statute 25.24.150(c) requires the superior court to base its custody rulings on the child's best interests and lists nine potentially relevant factors that the court must consider before making its best-interests determination:

(c) The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

---

**1.** See Siekawitch v. Siekawitch, 956 P.2d 447, 449 (Alaska 1998).

**2.** See id.

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

■ While a court determining custody must always consider each of these statutory factors, it need not refer to all of them in explaining its custody decision. The court needs only to discuss those factors that it considers actually relevant in light of the evidence presented in the case before it;[3] express mention of each factor is not required,[4] but the court's findings must at a minimum "give us a clear indication of the factors which [it] considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[5]

■ Here, in its written findings of fact and conclusions of law, the court focused on a single factor—the parents' "desire and ability . . . to allow an open and loving frequent relationship between the child and the other parent"[6]—to the exclusion of all others, stating, in relevant part:

5. The court acknowledges that both parties recognize that it is critical for the children's well being that the parties do everything they can to overcome the past problems. Furthermore, that the parties are lucky that the children are doing well in spite of the wrenching away at the separation.

6. It is evident that there is continuing difficulty by Michael Park in feeling free to freely provide for transportation and work with Tara Park in achieving visitation with the children. This is a reason in choosing which party should have custody. The court can only look at past behavior and finds there has been rigidity by Mr. Park in response to his responsibilities regarding visitation and that he has resisted following the spirit of the court's orders in that regard, even though he has been shown to be a caring, and effective father in many, many ways.

Based on this factor alone, the court's written findings deemed it "appropriate to follow the recommendations of the custody investigator, Susan Arth, . . . with some modifications." The court's oral findings do not disclose active consideration of any other statutory factor; though somewhat more elaborate, they essentially mirror the written findings.[7]

**3.** See Borchgrevink v. Borchgrevink, 941 P.2d 132, 138–39 (Alaska 1997) (noting no error in trial court's failure to expressly address those factors not disputed by the parties and those not favoring the parent to whom the court denied custody).

**4.** See id. at 139–40 (holding that though the court did not refer to AS 25.24.150(c), the findings adequately revealed its reasoning in that they provided a clear indication of the factors that the court found important); see also Duffus v. Duffus, 932 P.2d 777, 779 (Alaska 1997) (holding that "[w]hile trial courts are encouraged to state all findings in their written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review").

**5.** Borchgrevink, 941 P.2d at 137 n. 2.

**6.** AS 25.24.150(c)(6).

**7.** In its post-trial oral remarks, the superior court said:

Neither of you is without fault in this thing. It's clear to the court that Mr. Park acted based on hurt feelings and emotions and did what a person may do when they think that "I've got to protect my children, I've got to protect myself. I've got to do what's in my interests" in reaction to hurtful conduct and behaviors that were shocking to him at the time. That doesn't mean what he did was right or the best interest for the children. Indeed, I think, you know, after seeing this case now for the past several months, I think the two of you are extremely lucky at how well the children are doing in spite of that. In other words, they're doing well in spite of that

While these findings clearly indicate one statutory factor that the court considered important to its analysis, they provide no meaningful insight into what the court thought of other factors that undisputedly had relevance under the evidence actually presented at trial—or whether the court even considered other relevant factors.

For example, AS 25.24.150(c)(5) requires the court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." But the court's written findings fail to mention continuity, and its oral findings suggest that it thought the factor irrelevant:

> [T]he one thing that does seem evident to me is that there is continuing difficulty at this point for Mr. Park in being—feeling free to freely provide for transportation and work with Ms. Park in achieving visitation for her children here and I think that that is preeminently a reason in choosing between which parent since I have to choose some parent and it's not merely a reliance on status quo . . . .

By stating that "I have to choose some parent" and that Michael's resistance to visitation "is preeminently a reason in choosing between which parent," the superior court suggests that its custody award focuses on this single factor to the exclusion of others. Moreover, the court reinforces this impression by categorically rejecting "mere[ ] . . . reliance on status quo" as a valid basis for

awarding custody—a rejection that seemingly overlooks the prominent role assigned to the status quo in AS 25.24.150(c)(5), which expressly commands courts to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." The court thus creates a strong impression that it specifically declined to consider factor (c)(5).[8]

Yet this factor was undoubtedly at issue in this custody proceeding. By the time of the custody hearing, the children had been living with Michael in Texas for nearly two years. A home study conducted by a Texas social worker shortly before trial observed that the children have their own rooms and have adequate and appropriate clothing, that they receive above average grades and are enrolled in a school district with "an excellent reputation and scholastic record in [the] area," and that Michael supports the girls' engagement in extracurricular activities such as martial arts and jazz dance. The Texas home study—which Alaska custody investigator Arth appended to her own custody report—concluded that "Mr. Park provides an adequate appropriate home environment."

Nor can we glean by implication from Arth's custody report the court's views concerning the elements of factor (c)(5)—the children's need for a stable, satisfactory environment and the desirability of maintaining continuity. Although Arth's report recommends an award of custody to Tara, it contains little solid information about the home

---

wrenching away that occurred back at the separation.
> I think that the one thing that does seem evident to me is that there is continuing difficulty at this point for Mr. Park in being—feeling free to freely provide for transportation and work with Ms. Park in achieving visitation for her children here and I think that that is preeminently a reason in choosing between which parent since I have to choose some parent and it's not merely a reliance on status quo which parent will promote visitation. I can only look at behavior in the past and I have to say that there has been rigidity in response to that responsibility that does not—is not at the level that I would expect somebody with his background. In other words, he comes out of the Marines. He knows the idea of duty and he knows how to abide by it and yet, he has resisted following the spirit of the court's orders and I'm disappointed for him in

that and hope as time progresses that he gets past that because he is obviously a caring and effective father in many, many ways.
> But I think on the balance that it's appropriate to follow the recommendations of Ms. Arth and I do so with some modification.

8. In our view, these findings do not, as the dissent suggests they do, evince a balanced consideration of Michael's visitation problems and the desirability of maintaining continuity of the children's life in Texas. *See* Dissent at 213. To the contrary, they appear to indicate the superior court's categorical rejection of the status quo as a valid consideration for purposes of awarding custody. But assuming that the findings might reasonably be read to have the meaning ascribed to them by the dissent, this ambiguity itself would be a telling sign of the need for more specific findings.

setting or school life that the girls could expect to face in Alaska or about the likely impact on their lives of a sudden dislocation from their established home in Texas. Arth's report gives cursory recognition to the existence of advantages and disadvantages in both home settings but contains no meaningful discussion of the desirability of maintaining continuity:

> There are certainly advantages of returning the children to their mother's care, in the community where they built their young lives. There are also advantages of allowing the children to remain with their father, in Texas, where they are building a new life.[9]

The dissent observes, however, that because the parties concentrated on the visitation disputes during the custody hearing, "the trial court reasonably focused its attention upon the effect that the visitation disputes have had on the children."[10] Yet the trial court's duty to determine custody required it to look beyond the points specifically disputed by the parties: AS 25.24.150(c) expressly commanded the court to "determine custody in accordance with the best interests of the child" based on a consideration of all of the statutory factors that were relevant to the issue.

Moreover the dissent's observation misconstrues the trial court's findings. The findings do refer briefly to the effect that Michael's and Tara's original separation had on their children, noting that both children were "doing well in spite of [that] wrenching away." But neither the written nor oral

findings discuss how the subsequent visitation disputes affected the children. Indeed, apart from mentioning that both children appear to be doing well, the court's findings are completely silent on the children's current "physical, emotional, mental, religious, and social needs"[11] and say nothing about how those needs might be impacted by abrupt relocation to Alaska.

Nor did the custody investigator meaningfully address these factors.[12] In fact, at the custody hearing, Arth acknowledged, "I don't have the first-hand information about how [Michael] is with the children in his environment. I also do not have information about Mother's home. In a sense I have more information about Mr. Park's home than I do about Ms. Park's because we don't do home visits here, but that was done in Texas." At the custody hearing Arth's testimony focused almost exclusively on the suddenness of Michael's departure to Texas and his subsequent resistance to Tara's efforts to obtain visitation. Arth emphasized that the major component of her custody recommendation was her lack of confidence that Michael would allow Tara visitation "without undue hassle and so on." Yet she candidly admitted that she had "no way of knowing" what would happen if the court awarded Tara custody:

> I have no way of knowing how [Tara] will handle [visitation]. She asserts that she will support open, you know, frequent contact. On the other hand, Mr. Park has made the same [assertion] so it's difficult to know with any certainty what might occur.

---

9. Moreover, although the court adopted Arth's recommendations, it did not adopt or purport to incorporate by reference any of the factual findings or analysis set out in her report.

10. Dissent at 212.

11. AS 25.24.150(c)(1).

12. As the dissent points out, in its oral remarks following the custody hearing, the superior court mentioned the inevitable difficulty the children would have in saying goodbye to friends and family in Texas and, in so doing, referred to the investigator's report. *See* Dissent at 210–211. But this discussion—the court's only reference to the potential impact of its custody order on the children—occurred only after the court had al-

ready entered its custody decision, as it was considering when the change of custody should actually be implemented and how subsequent holiday visitation should be apportioned. In mentioning the custody report, the court specifically referred only to its recommendations for future visitation, which assumed that the children would move to Alaska immediately if the court awarded custody to Tara. The report itself did not address this assumption, but at the hearing Arth testified that, if the court followed her recommendation to award custody to Tara, she believed that it would be "important for the children to have as much closure as possible." Arth did not otherwise report on, or testify to, the likely emotional impact that a change of custody might have on the children.

While the dissent rightly notes "that interference with visitation is a particularly significant issue with respect to determining custody," [13] it is important to emphasize that, but for a Christmas visit to Alaska that the superior court granted only several days before it was to occur and that Michael claimed he was unable to arrange due to lack of available airline reservations, Michael complied with all of the court's visitation orders. The court specifically faulted Michael not for disobeying, but for resisting "the spirit" of the court's visitation orders—a resistance manifested largely through Michael's repeated litigation over Tara's motions for visitation.

Yet Tara's motions were themselves necessitated by the superior court's interim custody order, which failed to establish any specific visitation schedule and merely provided that Michael was to allow Tara to visit the children freely *in Texas*. Notably, Arth testified at the custody hearing that a clear visitation order would likely alleviate many of the problems with visitation, regardless of who received custody:

> I certainly think [it] likely that if everything is clearly spelled out that the problems will reduce regardless of where the children are placed. I think very clear instructions would be helpful to this family.[14]

In sum, neither Arth's custody report nor her testimony shore up the superior court's incomplete findings.

Tara nonetheless suggests that the court's findings are adequate under our recent decision in *Borchgrevink v. Borchgrevink*.[15] But *Borchgrevink* is easily distinguishable. The trial court in *Borchgrevink* actually made extensive findings concerning all relevant

factors listed in AS 25.24.150(c); it also stated the legal conclusions underlying its custody decision.[16] The court neglected only to enter integrative findings linking its key legal conclusions to any particular findings of fact.[17] Given this setting, we upheld the trial court's findings and conclusions, finding that the record as a whole enabled us to infer which specific facts the court had relied on in reaching its legal conclusions.[18]

In affirming the custody award in *Borchgrevink*, we recognized that findings of fact and conclusions of law serve three vital purposes in child custody cases: to aid the trial court in its own reasoning process, to aid this court in conducting effective appellate review, and to enable the losing party to decide if the case presents a question worthy of appeal.[19] We then concluded that the trial court's findings met each of these goals: we noted that the comprehensive nature of the findings ensured that the trial court had engaged in a thorough and appropriate reasoning process;[20] we observed that the substantive information expressed in the findings clearly indicated the steps that the trial court had followed and, therefore, provided an adequate basis for appellate review;[21] finally, given that the findings covered all of the actually disputed issues, we concluded that they enabled the losing party to evaluate the efficacy and scope of appealing the decision.[22]

But in sharp contrast to *Borchgrevink*, the findings at issue here meet none of these intended purposes. Their brevity, their almost exclusive focus on a single statutory factor, and their conclusory adoption of the custody investigator's recommendations provide no assurance that the trial court fol-

---

**13.** Dissent at 214.

**14.** In discussing this evidence we do not suggest that the trial court's factual findings concerning Michael's resistance to visitation are clearly erroneous. The limited purpose of our discussion is to emphasize that when we consider the trial court's findings on this point in the context of the record as a whole, we find it far from obvious why the trial court gave them dispositive significance in the overall custody determination.

**15.** 941 P.2d 132 (Alaska 1997).

**16.** *See id.* at 135–37, 138.

**17.** *See id.* at 137, 139–40.

**18.** *See id.* at 139–41.

**19.** *See id.* at 139; *see also id.* at 142 (Matthews, J., dissenting).

**20.** *See id.* at 139.

**21.** *See id.*

**22.** *See id.*

lowed the thorough, deliberate reasoning process required under AS 25.24.150(c). These same shortcomings preclude effective appellate review, since they force us to speculate as to what relevant statutory factors other than factor (c)(6) the court might have considered and what it thought of those factors. And similarly, these shortcomings deprive Michael of any reliable means to determine if the court based its custody decision on any factual or legal error that he might successfully raise on appeal.

The point bears repeating that adequate findings in a child custody case are not "unnecessary work for the trial judge."[23] Rather, they promote a balanced consideration of all factors bearing on the best interests of the child; they encourage parents to understand and accept the trial court's ruling; and they enable this court to conduct meaningful appellate review—an indispensable part of our justice system. Given their vital role, proper findings must not be regarded as a "burden,"[24] even by trial judges who are saddled with heavy domestic relations caseloads.

As the dissent points out, "we have previously affirmed trial courts' custody decisions that rested primarily on lack of cooperation in visitation."[25] Yet as the dissent also acknowledges, we have recognized that "trial courts should not give undue weight to any one statutory factor to the exclusion of other factors."[26] This is precisely the danger we perceive in the present case. The superior court's singular focus on Michael's resistance to Tara's requests for Alaska visitation suggests that it attached overriding importance to this one factor. And our own review of the record leaves us unpersuaded that the

court's custody award reflects a balanced consideration of all relevant factors.

## IV. CONCLUSION

We therefore conclude that the superior court's findings fail to comply with AS 25.24.150(c) and preclude effective appellate review. Accordingly, we REVERSE and REMAND for entry of express findings of fact and conclusions of law addressing all statutory factors that the superior court deems relevant in determining custody.[27] On remand, the court should allow the parties an opportunity to present updated evidence and should base its new findings on the children's current best interests.

FABE, Justice, with whom CARPENETI, Justice, joins, dissenting.

## I. INTRODUCTION

I disagree with the court's conclusion that the superior court's findings were inadequate. Both the superior court's findings and the trial record in this case reveal that the trial judge considered all relevant and disputed statutory factors and came to a sound custody decision. I therefore respectfully dissent.

## II. DISCUSSION

As we articulated in *Borchgrevink v. Borchgrevink*,[1] the standard of review for alleged inadequacy of a trial court's factual findings is "whether they give a clear indication of the factors considered important by the trial court *or* allow us to determine from the record what considerations were involved."[2] We have emphasized in several of our prior custody decisions that, "[w]hile trial courts are encouraged to state all findings in their

23. Dissent at 215.

24. *Id.* at 215.

25. *Id.* at 214 (citing *Julsen v. Julsen*, 741 P.2d 642, 649 (Alaska 1987)).

26. Dissent at 214 (citing *I.J.D. v. D.R.D.*, 961 P.2d 425, 428 (Alaska 1998)).

27. Because we remand for additional findings, we need not address Michael's remaining arguments.

1. 941 P.2d 132 (Alaska 1997).

2. *Id.* at 137 (emphasis added) (citing *Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996)). *See also Julsen v. Julsen*, 741 P.2d 642, 649 n. 10 (Alaska 1987) (noting that an express tally of factors is unnecessary as long as the record reflects consideration of factors); *McDanold v. McDanold*, 718 P.2d 467, 470 (Alaska 1986) ("Mere recital of the statutory language helps no one. However, the trial court should specifically address all relevant statutory factors where applicable.").

written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review."[3] This rule is in accord with that of other jurisdictions.[4] In the end, we should not overturn a trial judge's decision if he or she has made "a sound decision and no reason exists ... to overturn it."[5]

Notwithstanding these well-established principles, the court today remands this case because the superior court "fail[ed] to mention" the factor of continuity[6] and did not "fully explain its decision" in its findings.[7] The court cites *Borchgrevink* in support of the notion that trial courts must "*discuss*" all relevant factors in its decision.[8] But we stated in *Borchgrevink* that either the trial court's findings "or" the record must clearly indicate which factors the trial court considered.[9] This statement marked our reaffirmation of a long line of cases establishing that express findings are unnecessary if the record reveals which factors the court found determinative in awarding custody.[10]

The court also imposes the additional requirement on trial judges that they "look beyond the points specifically disputed by the parties."[11] This language is in direct conflict with our long-standing recognition that trial courts need only make factual findings on the relevant statutory factors that are in dispute.

"Facts which are either uncontested or irrelevant would not assist this court in assessing the propriety of an award. Mere recital of the statutory language helps no one."[12]

Because of its failure to look to both the findings *and* the record for an indication of the factors considered by the trial judge, the court incorrectly concludes that the superior court's findings were inadequate. I disagree with the court's conclusion because I believe that Judge Michalski's findings, along with the record, do in fact provide a "clear indication of the factors considered important by the trial court."[13] The primary factor analyzed by the superior court in its custody determination was Michael's interference with visitation. The superior court noted in its written findings that Michael had refused to "freely provide for transportation and work with [Tara] in achieving visitation." And Judge Michalski remarked at trial that Michael's obstructionist behavior was the "preeminent[ ]" reason for his custody decision.

In *Borchgrevink*, we looked to the questioning and arguments at trial for further guidance as to which factors the court considered in its analysis.[14] Here, the parties' briefs and questions at trial indicate, in accord with the trial court's findings, that the

**3.** *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997). *See also Bird*, 914 P.2d at 1249 (requiring trial court to explain its reasoning only "where those reasons are not apparent from the record"); *Lowery v. McMurdie*, 944 P.2d 50, 53–54 (Alaska 1997) (Fabe, J., concurring in part and dissenting in part) (noting that remand is inappropriate if either findings or record disclose court's reasoning). *Cf. Bellanich*, 936 P.2d at 146 (Fabe, J., concurring in part and dissenting in part) (noting in context of property division case that findings need not be extensive); *D.H. v. State., DHSS*, 929 P.2d 650, 657 (Alaska 1996) (Fabe, J., dissenting) (arguing that, in a CINA proceeding, the court's findings *or* the record need only show the bases for the court's decision).

**4.** *See, e.g., McDanold*, 718 P.2d at 469–70 (citing cases); *In re Marriage of Lester*, 791 P.2d 1244, 1246 (Colo.App.1990) (holding that a trial court need not make specific findings if the record as a whole indicates that the court considered the necessary factors); *In re Marriage of Diehl*, 221 Ill.App.3d 410, 164 Ill.Dec. 73, 582 N.E.2d 281, 290 (1991) (same); *Peterson v. Peterson*, 408 N.W.2d 901, 903 (Minn.App.1987) (same); *In re Marriage of Saylor*, 232 Mont. 294, 756 P.2d

1149, 1151 (1988) (holding that a trial court need not make specific findings if custody order is supported by substantial evidence in the record).

**5.** *Julsen*, 741 P.2d at 649 n. 10.

**6.** Op. at 208.

**7.** Op. at 205.

**8.** Op. at 207 (emphasis added).

**9.** *See Borchgrevink*, 941 P.2d at 137.

**10.** *See Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996); *Julsen*, 741 P.2d at 649 n. 10; *McDanold*, 718 P.2d at 470.

**11.** Op. at 209–210.

**12.** *McDanold*, 718 P.2d at 470.

**13.** *Borchgrevink*, 941 P.2d at 137.

**14.** *See id.* at 139.

problem with visitation was the primary disputed factor in the case. The bulk of the testimony from both sides, including the testimony of Tara, Michael, the custody investigator, and the closing arguments of each side, centered around the visitation disputes. Michael's trial brief also focused on the visitation disputes, along with a paragraph mentioning that the children should stay in Texas because they had been there for two years and were doing well in school. Michael similarly concentrated on the visitation disputes in his appellate brief. Accordingly, the trial court reasonably focused its attention upon the effect that the visitation disputes have had on the children, since that was the major issue litigated at trial.

The court today identifies only one statutory factor that it claims the superior court failed to consider adequately: the stability that the children might experience from remaining in Texas .[15] But the trial court's findings reveal that the court *did* consider stability as a factor. The court noted at trial the inevitable difficulty the children would have in leaving friends and family in Texas but ultimately viewed the visitation problems as more significant than the stability of the status quo in Texas:

> [O]ne thing that does seem evident to me is that there is continuing difficulty ... for Mr. Park in ... freely providing for transportation and work with Ms. Park in achieving visitation ... and I think that that is preeminently a reason in choosing between which parent since I have to choose some parent and *it's not merely a reliance on status quo.*

(Emphasis added.) The trial court also noted in its written findings how lucky the parents were that the children were not having more problems, given the visitation difficulties:

> The court acknowledges that both parties recognize that it is critical for the children's well being that the parties do every-

thing they can to overcome the past problems. Furthermore, ... *the parties are lucky that the children are doing well in spite of the wrenching away at the separation.*

(Emphasis added.) Although the trial court acknowledged that Michael could provide well for the children, it ultimately decided that the visitation problems were paramount:

> The court can only look at past behavior and finds there has been a rigidity by Mr. Park in response to his responsibilities regarding visitation and that he has resisted following the spirit of the court's orders in that regard, even though he has been shown to be a caring, and effective father in many, many ways.

As well as drawing its own conclusions, the trial court also relied on the custody investigator's assessment of the stability factor in her report to the court. A review of the custody investigator's fifteen-page report belies the court's claims that the custody investigator only gave "cursory recognition" to the advantages of the children living in Texas and provided "no meaningful discussion" of the need for continuity.[16] The court quotes only one paragraph from the report to support this premise.[17] What the court does not excerpt is the report's discussion of, among other things, the religious and after-school activities in which both children are involved in Texas; the girls' school life in Texas; and the fact that Lacey misses her Anchorage friends and dislikes Texas, whereas Baille likes Texas. The report also discusses the Texas home study conducted by a social worker before trial. The report acknowledges that the study provided "valuable information about Mr. Park's living situation" but notes the contradictions between the Texas home study, which the custody investigator herself requested, and the custody investigator's own interviews with the children. In her testimony at trial, the custody investigator again referred to the Texas home

---

15. *See* Op. at 208; *see also* AS 25.24.150(c)(5). Michael argues this point only to the extent that he includes a sentence in his brief stating that stability and continuity are legitimate custody factors and inaccurately claims that the trial court "did not make any findings at all with respect to any of the [factors]."

16. Op. at 209.

17. *See id.*

study, explaining her review of it and why she took issue with some of the findings contained in the study.

The court dismisses the trial judge's adoption of the custody investigator's recommendations as "conclusory." [18] But in *Duffus v. Duffus*,[19] we noted that a trial court's adoption of a custody investigator's conclusions on a particular factor, even without further explanation, can be sufficient to show that the trial court addressed the factor.[20] One Michigan court has likewise held that trial courts need not articulate the factual bases for their custody determinations when doing so would repeat language contained in a custody investigator's report adopted by the court:

> We do not believe that . . . the circuit court can be said to have failed to state its findings on each [statutory factor], . . . since the court expressly adopted the findings enunciated by the referee. Those findings are presented in detail in five pages in the referee's report. A repetition of the referee's findings in the court's order of custody, rather than a declaration of adoption of those findings, was not required.[21]

Here, the superior court expressly included in its written order a similar declaration of the custody investigator's conclusions. Although the superior court did not specifically adopt the custody investigator's findings on any particular factor, as did the court in *Duffus*, it did refer to the custody investigator's report in its oral findings in the context of discussing the inevitable difficulty the children would have in saying good-bye to friends and family in Texas. More fundamentally, absent some specific allegation supported by the record, the supposition that a trial court would adopt a custody investigator's recommendations without carefully reading and considering the contents of the report is at best unwarranted.

The superior court's findings also serve the purposes underlying the standard for adequacy of findings that we outlined in *Borchgrevink*: aiding the trial court's analysis, allowing meaningful appellate review, and enabling litigants to determine which issues to appeal.[22] Judge Michalski's findings provide a clear indication of the primary basis for the custody decision—Michael's interference with visitation—and provide a discussion of the only other relevant disputed factor—stability. Accordingly, no reason exists to believe that the superior court's reasoning was guided by anything other than consideration of all the appropriate statutory factors. For the same reason, the findings are sufficiently reviewable and adequately identify the issues on appeal. Indeed, Michael's exclusive focus in his trial and appellate briefs on visitation difficulties and stability shows that the superior court's findings made the bases for the custody decision sufficiently clear to the litigants.[23]

It is also worth noting that interference with visitation is a particularly significant issue with respect to determining custody.[24]

18. Op. at 211.

19. 932 P.2d 777 (Alaska 1997).

20. *See id.* at 780.

21. *Constantini v. Constantini*, 171 Mich.App. 466, 430 N.W.2d 748, 750 (1988).

22. *See Borchgrevink v. Borchgrevink*, 941 P.2d 132, 139 (Alaska 1997).

23. Although the court's expressed concern is that the trial judge failed to make sufficient findings, the court also appears to second-guess the findings that it acknowledges the trial judge *did* make with respect to the visitation disputes. *See* Op. at 209–210. The court states that its discussion of the trial judge's findings is for the "limited purpose" of comparing the findings to the record as a whole to determine whether the trial

judge should have given the visitation issue "dispositive significance." Op. at 210 n. 14. But the court does not discuss the findings in the context of other evidence; rather, it attempts to draw new inferences from the evidence as to whether Michael violated "the spirit" of the trial judge's visitation orders, or whether he was merely responding reasonably to Tara's motions and the court's interim custody order. *See* Op. at 210. As the court itself acknowledges, such new inferences should not be drawn unless the trial judge's factual findings are clearly erroneous. *See* Op. at 210 n. 14.

24. *See generally* Kimberly K. Holtz, Comment, *Move–Away Custody Disputes: The Implications of Case–by–Case Analysis & the Need for Legislation*, 35 Santa Clara L.Rev. 319, 345–47 (1994) (emphasizing the importance of unhindered visitation to the best interests of the child in cases in which one parent moves out of state); Jeff Atkin-

For example, substantial interference with visitation is sufficient under Alaska law to constitute a substantial change of circumstances that may justify and require modification of custody after a court has already issued a decree, if modification is in the child's best interests.[25] One New York court wrote that interference with visitation is also an especially important factor in awarding custody: "Interference with the relationship between a child and a noncustodial parent by the custodial parent is an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent."[26] Here, the custody investigator noted how unworkable the situation had become, notwithstanding the advantages of the Texas living situation:

> There are also advantages of allowing the children to remain with their father, in Texas, where they are building a new life. *On the balance, it seems clear that visitation between the children and their mother will continue to be impeded if Michael retains physical custody. Although this investigator has no concrete information about what Tara is likely to do about visitation, it is fairly clear that the current situation works poorly for the children.*

(Emphasis added.) Although trial courts should not give undue weight to any one statutory factor to the exclusion of other factors,[27] we have previously affirmed trial courts' custody decisions that rested primarily on lack of cooperation in visitation .[28]

Disputes over child custody are among the most difficult cases a trial court must face.[29] Remanding a case such as this because of perceived "shortcomings"[30] in the trial court's written findings will result in unnecessary work for the trial judge, whose time would be better spent resolving undecided cases in the superior court's heavy domestic relations caseload. As long as the record reveals which factors the trial court found important in making its custody determination and supports the trial court's ultimate decision, we need not remand for further findings.

## III. CONCLUSION

I believe that the court's decision to burden the trial judge by requiring him to make additional written findings on relevant statutory factors is unsupportable under our case law. Because the superior court's findings in this case were adequate to reveal the court's analysis, allow meaningful review, and guide the litigants on appeal, I respectfully dissent.

son, *Criteria for Deciding Child Custody in the Trial and Appellate Courts*, 18 Family L.Q. 1, 25–26 (1984) (noting preeminence of interference with visitation as a custody factor and listing benefits of giving custody to the parent who best facilitates visitation).

25. *See Hermosillo v. Hermosillo*, 797 P.2d 1206, 1209 (Alaska 1990); *see also Lee v. Cox*, 790 P.2d 1359, 1362 (Alaska 1990). *See generally* Scott E. Friedman, *The Law of Parent–Child Relationships* 176 (1992) (noting that disregard of court visitation orders and failure to bring children to court appearances may justify a change in custody).

26. *Maloney v. Maloney*, 208 A.D.2d 603, 617 N.Y.S.2d 190, 191 (1994).

27. *See, e.g., I.J.D. v. D.R.D.*, 961 P.2d 425, 428 (Alaska 1998).

28. *See, e.g., Julsen v. Julsen*, 741 P.2d 642, 649 (Alaska 1987).

29. *See id.* at 648; *McDanold v. McDanold*, 718 P.2d 467, 468 (Alaska 1986).

30. Op. at 211.