**L. Donald JOHNSON, Appellant,**

v.

**Sylvia M. JOHNSON, Appellee.**

**No. S–4218.**

Supreme Court of Alaska.

July 17, 1992.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellant.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Donald Johnson appeals a Final Decree of Divorce claiming the superior court erred in its award of interim spousal maintenance, its division of the property and its allocation of costs. We affirm in part and remand in part for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Donald and Sylvia Johnson were married in 1946. Both were employed for a period of time. Sylvia's employment ended when she began raising children.

In 1948 the family moved to Fairbanks. Donald worked for the Alaska Road Commission, the Army Engineers and later became a partner in a water delivery service. In 1951 the family returned to Iowa for one year where they assisted Sylvia's father with his farm. They returned to Alaska and after a brief stay in Fairbanks they moved to Kenai.

In 1952, through a veterans' lottery, the family received a homestead on which they built the family residence. Sylvia has occupied the home from the time it was constructed until the present. Because of his occupations Donald spent relatively little time at home.

In 1952 Sylvia and the Johnson's oldest son were involved in an automobile accident. The child died and Sylvia suffered severe injuries including permanent partial hearing loss. The $15,000 settlement from the accident was used to start Kenai Float Plane Service, Inc. in 1957. Donald held 51% of the stock while Sylvia held 49%. Donald flew the planes and Sylvia ran a refueling service and kept the books. Donald also worked as a carpenter and a commercial fisherman in the summers between 1955 and 1962. Sylvia assisted by setting and mending nets and by keeping records.

As Kenai Float Plane Service became viable, the Johnsons became licensed guides and began conducting big game hunts. They developed Bear Lake Lodge on a parcel of land near Port Moller on the Alaska Peninsula. This facility began as a small cabin, but as the guiding operation flourished it evolved into a compound which included a main lodge of more than 5,000 square feet, a bunkhouse of more than 4,000 square feet, a substantial workshop and many other facilities. Donald flew clients to the lodge and guided them on hunts. Sylvia assisted by maintaining the books of the Bear Lake operation, cooking, cleaning and serving as an assistant guide.

In 1971 Donald sold an interest in the Bear Lake operation to Gene Kulyan and the operation was incorporated. In 1985 Donald purchased Mr. Kulyan's interest and became the sole owner of Bear Lake Lodge, Inc. Throughout these changes in ownership, Sylvia continued to assist with the operation of the lodge.

Meanwhile, the Johnsons constructed a hangar to serve Kenai Float Plane Service on part of the Kenai homestead. An airstrip and other improvements were added to the property.

In 1983 Donald suffered a heart attack which left him unable to pilot commercial aircraft or guide hunters. Donald transferred his 51% interest in Kenai Float Plane Service to his son Warren. Since the transfer, Warren has operated the flight service.

By 1986 the Johnsons had accumulated a large gun collection and a large number of animal trophies and skins. They also had acquired interests in land including property at Cold Bay, some aircraft, several antique cars, coins and other collectibles. Both Donald and Sylvia had received inheritances. Of the original 160 acre homestead, there remained about 120 acres. This acreage was composed of 102 acres on which the flying service facilities were located, 15 acres around the family residence, and a separate two and one half acre parcel.

The circumstances which led to the divorce are in dispute. When Sylvia filed for divorce on February 6, 1986, she requested a restraining order against Donald to prevent harm to herself and to prevent dissipation of marital assets. The superior court entered a temporary restraining order, followed by a preliminary injunction, restricting Donald's access to the family residence and forbidding the parties from dissipating assets. Upon Sylvia's motion, Judge William Fuld entered an order in July 1986 awarding Sylvia interim spousal maintenance in the amount of $1,000 per month. The maintenance award remained in effect through the remainder of the divorce proceedings.

The marriage was ended in August 1987. Issues of support and property division were reserved for trial. Because insufficient evidence existed concerning values, the trial court appointed a master to oversee property identification and valuation.

After the trial court received the Master's Report and supplemental pleadings of the parties, it entered Findings of Fact and Conclusions of Law and a Final Decree of Divorce. On appeal, Donald asserts that the trial court erred in its valuation and division of property, its assessment of costs and in its award of spousal maintenance.

## II. STANDARD OF REVIEW

 The determination of an award of interim spousal maintenance under AS 25.-24.140(a)(2), like the determination of an award for interim attorney's fees and costs under AS 25.24.140(a)(1), is committed to the sound discretion of the trial court. *See Burrell v. Burrell,* 537 P.2d 1, 7 (Alaska 1975). We review an award of interim spousal maintenance for an abuse of discretion.

Property divisions are reviewed to determine "whether the trial court abused the broad discretion given it under AS 25.24.160(a)(4)." *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988). The trial court must use a three-step process in dividing property: First, the trial court is to determine what property is available for division; this determination is reviewed under an abuse of discretion standard "although it may involve legal determinations, which this court reviews independently." *Id.* Second, the trial court is to value the property; this is a factual inquiry to be reversed only if clearly erroneous. *Id.* Third, the trial court is to equitably allocate the property; this determination is reviewed applying an abuse of discretion standard and set aside only if clearly unjust. *Id.* *Richmond v. Richmond,* 779 P.2d 1211, 1213 (Alaska 1989).

## III. DISCUSSION

A. *The Award of Interim Spousal Maintenance.*

 Judge Fuld entered an order awarding Sylvia interim spousal maintenance of $1,000 per month on July 7, 1986. With the exception of one $900 payment, Donald

failed to pay the maintenance. On Sylvia's motion, the delinquent maintenance through September 2, 1987, along with interest and costs, was reduced to judgment in the amount of $14,993.17 in December 1987. Sylvia executed against Donald's bank accounts and recovered most of the judgment. As part of the Final Decree of Divorce, Donald was ordered to pay the unpaid spousal maintenance which had accrued from October 2, 1987 through August 29, 1990.

Donald contends that the award of "temporary alimony against a spouse who was permanently and totally disabled and unable to pay because he had no income" was clearly erroneous.[1] Donald asserts that Sylvia had employment income of $12,000 to $14,500 per year and could have liquidated assets in the event she required further funds. Further, Donald contends that because the trial court did not articulate the basis for the maintenance award, the award was erroneous.

We are hampered in our review of this issue because the record contains no findings in support of the interim maintenance order entered by Judge Fuld.

We have often commented on the requirement in Alaska Civil Rule 52(a) that trial courts make findings in support of their decisions in non-jury cases.

The trial court thus has a duty "by sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' "

*Lang v. Lang,* 741 P.2d 1193, 1195 (Alaska 1987) (quoting *Merrill v. Merrill,* 368 P.2d 546, 548 (Alaska 1962)). *See Ogard v. Ogard,* 808 P.2d 815, 816 (Alaska 1991) (remanding where we were "unable to determine whether [an interim child support award was] appropriate because the court ha[d] not made findings of fact and conclusions of law in support of the award"); *Lewis v. Lewis,* 785 P.2d 550, 554 (Alaska 1990) (remanding where "the court provid-

**1.** Sylvia disputes this characterization of Don- ald's financial condition.

ed no explanation for treating interim spousal maintenance as a distribution of marital property").

■ Without an understanding of the basis for the order, we cannot determine whether the trial court abused its discretion in awarding Sylvia interim spousal maintenance. Therefore, we must vacate the award[2] and remand the issue for specific findings.

In remanding the issue we note that the legislature has provided trial courts with little guidance regarding how they are to identify the "appropriate circumstances" which justify an interim spousal maintenance award. *See* AS 25.24.140(a).[3] We make the following observations to assist in that regard.

■ We have previously distinguished the purposes of spousal maintenance and the distribution of marital property. *See Lewis v. Lewis,* 785 P.2d 550, 553–54 (Alaska 1990). In conjunction with an interim award of attorney's fees and costs, an award of interim maintenance provides for reasonable and necessary living expenses while divorce litigation is pending and insures that neither spouse is disadvantaged in presenting their claims. *See Cooper v. State,* 638 P.2d 174, 181 (Alaska 1981).

■ Because the purpose of interim spousal maintenance is different from the purpose of a property settlement, a court awarding interim spousal support need not consider all of the factors articulated in *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 6 (Alaska 1962). Rather, the primary factors which should be considered in awarding interim spousal maintenance are the relative economic circumstances and needs of the parties and the ability to pay

the maintenance. *See Burrell v. Burrell,* 537 P.2d 1, 7 (Alaska 1975).

### B. *The Kenai Homestead.*

■ Without citing supporting authority, Donald argues that he should have been awarded a portion of the Kenai homestead. He contends that "basic fairness" requires that he should receive some portion of the homestead because it was "obtained by him solely as a result of a land lottery for veterans" and because it was "the base upon which he built his life."

This court has frequently stated that a trial court's equitable allocation of property "is reviewed purely under the abuse of discretion standard and 'will not be disturbed unless it is clearly unjust.'" *Moffitt v. Moffitt,* 749 P.2d 343, 346 (Alaska 1988) (quoting *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983)).

When the trial court's property division is viewed as a whole, we cannot say that the award of the homestead to Sylvia is "clearly unjust" in light of the award to Donald of all the animal trophies and the entire Bear Lake Lodge operation. The manner in which the parties obtained the homestead and the notion that it was a base of operations do not require a different allocation.

### C. *The Valuation of the Cold Bay Property.*

Donald contends that when the trial court valued the Cold Bay property at $30,000 and awarded it to him, the court failed to recognize that Donald "still owed $17,000 for the lot and that he had paid some $7,000 to $8,000 per year for the lot during

2. We are not persuaded by Sylvia's contention that Donald has waived any claim of error regarding that portion of the interim spousal maintenance award that was reduced to judgment on December 2, 1987. The order of the trial court directing Donald to pay Sylvia maintenance during the pendency of the divorce proceeding was interlocutory in nature. The judgment supporting the maintenance order disposed of less than all of the claims in the action and resolution of the matter was subject to revision before entry of the Final Decree of Divorce. Unless certified in accordance with

Alaska Civil Rule 54(b), such a judgment is not immediately appealable. Alaska R.Civ.P. 54(b). Donald properly raised the propriety of the maintenance award in his appeal from the Final Decree of Divorce.

3. The statute provides in part that "[d]uring the pendency of the [divorce] action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including ... reasonable spousal maintenance...." AS 25.24.140(a).

the period after the Decree of Divorce and before the Final Judgment herein." Donald asserts that the court abused its discretion when it ignored his testimony regarding the amount of the debt and the payments.[4]

Donald's testimony at trial regarding the Cold Bay property was imprecise. Donald stated, "I paid the—I think it was $5,000 down. And then I've been paying roughly, I think; $7,000 or $8,000 a year. That's on the interest and principal. And I just found out the other day, I believe I owe $17,000 or something on it yet." In contrast, Appendix "A" to Donald's Trial Brief values the Cold Bay lot at $30,000 without disclosing any related encumbrance.

 A trial court's determination of the value of property and the existence and amount of encumbrances is a factual inquiry and should be reversed only if clearly erroneous. *Richmond v. Richmond*, 779 P.2d 1211, 1213 (Alaska 1989). The court's findings regarding the valuation of the lot are supported by evidence. We will not say that the trial court "clearly erred" when it adopted one of Donald's representations over the other.

D. *The Cost of the Second Appraisal of Bear Lake Lodge.*

Donald contends that Sylvia incurred unnecessary costs by ordering a second appraisal of Bear Lake Lodge after he had already obtained an adequate appraisal which was ultimately accepted by the Master. Donald emphasizes that the trial court established that appraisal costs were to be split between the parties unless a party incurred unnecessary costs. Donald argues that the court erred when it failed to order Sylvia to pay the entire cost of the second appraisal.

Donald's argument lacks merit because Donald has not persuasively demonstrated that the second appraisal was unnecessary.[5]

E. *Other Issues.*

After Sylvia filed her appellee's brief, Donald filed a Motion to Amend Statement of Points on Appeal. In his memorandum in support of the motion, Donald conceded that two of the issues he argued in his brief could "be reasonably construed as being outside the original statement of points on appeal." These issues are: 1) the "trial court erred by its failure to assign a value of personal property award [sic] to Sylvia;" and 2) the "trial court erred in determining that the hangar on the homestead was the property of Kenai Float Plane Service."[6] We denied Donald's motion to amend his Points on Appeal.

 Generally, we "will consider nothing but the points" in an appellant's statement of points on appeal. Alaska R.App.P. 210(e). Therefore, we will consider neither

---

**4.** Donald contends that his position is supported by language in *Burgess v. Burgess*, 710 P.2d 417, 421 & n. 6 (Alaska 1985). In *Burgess*, this court indicated that a party would be entitled to an offset for post-separation improvements to property unless the party invaded marital property to finance the improvements. *Id.*

As Sylvia points out, Donald's April 16, 1986 Financial Declaration reveals no source from which he could have obtained such funds except marital property. If Donald invaded marital property to make payments on the Cold Bay lot, he should receive no offset.

**5.** Donald contends that his position is supported by *Dixon v. Dixon*, 747 P.2d 1169, 1174 (Alaska 1987). Donald misreads *Dixon*. In *Dixon*, we concluded that the trial court *did not* abuse its discretion where it required one party to pay for more than half the cost of appraisals even though the court had previously ordered the costs split. *Id.*

**6.** Assuming that issue 2 is properly before the court, it is without merit. Donald does not contest the $102,000 valuation of the hangar adopted by the court. Neither does he dispute the fact that he transferred his interest in Kenai Float Plane Service, Inc. to his son Warren with the result that Warren and Sylvia own 51% and 49% of the corporation respectively. Rather, he argues that the court erroneously determined that the hangar on the Kenai homestead was a corporate asset and subtracted 51% of the value of the hangar from the marital estate. We note that there is evidence in the record which supports the court's finding that the hangar was the property of Kenai Float Plane Service, Inc. Beginning in 1971, the corporation listed the hangar as an asset and recognized depreciation of the hangar on its corporate tax schedules.

of these two issues which Donald concedes are outside the original points.

Donald raises two issues in his Statement of Points on Appeal relating to valuation of collectible coins. However, he concedes in his reply brief that, by stipulation of the parties, the trial court was not to consider the coins.

■ Donald also contends, in point number six, that the court erred in finding that Donald had taken a gun from the custody of Sylvia and requiring him to replace the gun. However, Donald does not argue this point in his briefs. Because Donald has abandoned the issue, we will not consider it. *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska 1977).

## IV. CONCLUSION

The trial court did not make findings of fact or conclusions of law explaining the basis of the award of interim spousal maintenance in the amount of $1,000 per month. Because we cannot determine the grounds on which the award rests, we cannot determine whether the court abused its discretion in entering the award. Therefore, the maintenance award must be VACATED and the case REMANDED for an explanation of the grounds for the award. In all other respects, the judgment of the court is AFFIRMED.