Joseph Walter VIRGIN, Appellant,

v.

Kathey Lynn VIRGIN, Appellee.

No. S–8686.

Supreme Court of Alaska.

Nov. 5, 1999.

---

18. See Yahara v. Construction & Rigging, Inc., 851 P.2d 69, 72 (Alaska 1993).

Lynda A. Limón, Anchorage, for Appellant.

Wayne A. Ross and Colleen R. Baxter, Ross & Miner, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Joseph Virgin appeals the superior court's interim orders and the findings of fact and conclusions of law entered in connection with its decree of divorce. Because we conclude that the superior court did not abuse its discretion with respect to any of its findings, conclusions, or orders, we affirm them in their entirety.

## II. FACTS AND PROCEEDINGS

In September 1997, after nineteen years of marriage, Kathey Virgin filed for a divorce from her husband, Joseph Virgin. Along with her complaint, Kathey filed a motion for interim relief under AS 25.24.140. The court granted her motion; it awarded her, among other things, $500 per month in spousal support and $2,500 in interim attorney's fees. Following the divorce trial, the court entered

written findings of fact and conclusions of law and a decree of divorce. Joseph appeals.

## III. DISCUSSION

### A. Standards of Review

■■■■ We review a trial court's interim order,[1] award of rehabilitative alimony,[2] custody and visitation award,[3] division of marital property,[4] and award of attorney's fees and costs[5] for abuse of discretion. We review a trial court's underlying factual findings for clear error.[6] We reverse a child support award if we have a definite and firm conviction that a mistake has been made.[7]

### B. Interim Order

■■■■ Joseph challenges the interim award of spousal support and attorney's fees, arguing that reversal is required because the superior court failed to make factual findings regarding the parties' relative economic positions and Joseph's ability to pay. We disagree. A trial court must articulate the reasons for its holding where those reasons are not apparent from the record.[8] But the basis of the interim award here is obvious from the record; the court made extensive findings regarding the parties' economic positions when it entered findings of fact and conclusions of law following trial.[9] In addition,

Joseph did not demonstrate that it was impossible for him to pay the amount ordered. We therefore affirm the superior court's interim award.

### C. Rehabilitative Alimony

■■■ The superior court awarded Kathey rehabilitative alimony of $1,000 per month for four years. Joseph's argument that Kathey's educational plans are too vague to justify the award is without merit. "[A] spouse's educational plan is sufficient for the purpose of supporting a rehabilitative alimony award if the spouse identifies a career goal, a degree program aimed at realizing that goal, and a time frame during which the degree may be earned through reasonable diligence."[10]

■■■ Kathey met these requirements. Kathey identified a career goal; she testified that she wanted to become a teacher or a nurse. She identified a degree program aimed at earning the necessary credentials: Colorado State University (CSU) in Fort Collins, Colorado.[11] She testified that she already had a CSU student handbook and that she had researched tuition and the availability of grants and financial assistance for low-income single parents. She also set out

1. See Johnson v. Johnson, 836 P.2d 930, 933 (Alaska 1992); Burrell v. Burrell, 537 P.2d 1, 7 (Alaska 1975).

2. See Ulsher v. Ulsher, 867 P.2d 819, 821 (Alaska 1994).

3. See Monette v. Hoff, 958 P.2d 434, 436–37 (Alaska 1998); Vachon v. Pugliese, 931 P.2d 371, 375 (Alaska 1996); J.F.E. v. J.A.S., 930 P.2d 409, 411 (Alaska 1996).

4. See Lewis v. Lewis, 785 P.2d 550, 552 (Alaska 1990).

5. See Burrell, 537 P.2d at 7.

6. See Vachon, 931 P.2d at 375.

7. See Kowalski v. Kowalski, 806 P.2d 1368, 1370 (Alaska 1991).

8. See Alaska R. Civ. P. 52(a) (requiring trial courts to make findings in support of their decisions in non-jury cases); see also Duffus v. Duffus, 932 P.2d 777, 779 (Alaska 1997) (holding that "[w]hile trial courts are encouraged to state

all findings in their written [child custody] orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review"); Bird v. Starkey, 914 P.2d 1246, 1249 (Alaska 1996) (requiring trial court to explain its reasoning only "where those reasons are not apparent from the record"); Johnson, 836 P.2d at 934–35 (remanding interim spousal maintenance order because record contained no findings in support of order).

9. The trial court noted that during their marriage, Joseph earned most of the family's income, earning an average of $92,328 per year from 1995 to 1997. In contrast, Kathey cared for the home and the children; she worked occasionally as a substitute teacher and teacher's aide, earning an average of $3,992 per year from 1995 to 1997.

10. Myers v. Myers, 927 P.2d 326, 328 (Alaska 1996).

11. Kathey testified that she intended to move with the children to Fort Collins following the divorce.

a time-frame of three to four years for earning the degree.

Joseph's claim that he has insufficient resources to pay the rehabilitative alimony is also unpersuasive. His monthly payments total no more than $3,648, including child support of $1,980 for three children (one of whom was about to become emancipated), alimony of $1,000, and the home mortgage payment of $668. Because the court awarded Joseph possession of the marital home, and because it was not clear that the parties intended to immediately sell the marital home,[12] the mortgage payment at least in part represented Joseph's own housing expense. Moreover, in his pretrial memorandum, Joseph agreed to pay rehabilitative alimony for four years.

### D. *Custody*

Joseph appeals the court's decision to award Kathey sole custody of the parties' three minor children.

#### 1. *Determination of children's best interests*

The standard for determining if a trial court's factual findings on custody are inadequate is whether the findings "give us a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved." [13] The trial court need only "discuss those factors that it considers actually relevant in light of the evidence presented in the case before it." [14] In the end, we should not overturn a trial judge's decision if he or she has made "a sound decision and no reason exists . . . to overturn it." [15]

Here, the trial court made clear the reasons for its decision to award primary custody to Kathey. The trial court first noted Joseph's hostile behavior toward Kathey's request for money for the children's needs. It took special note of Joseph's "obstructive"

behavior, including his efforts to convince the children not to move to Colorado:

> During the period of the parties' separation, Mr. Virgin explained to the children about his finances in an effort to enlist their aid or to convince them they should not go to Colorado with their mother. . . . He told one of the children the "cupboards were bare" and he could not pay transportation costs. He told the children a number of negative things about their proposed move to Colorado.

While acknowledging that Joseph's behavior may have been partially caused by stress, the trial court concluded that "it fits together with other evidence . . . to show a pattern of behavior towards Mrs. Virgin that indicates disregard of her status as an equal in the custodial relationship and lack of impulse control when issues regarding finances or decisions regarding the children are considered."

The court also described Joseph's emotional and physical abuse of Kathey:

> Mr. Virgin closed all the family accounts when the parties separated. Mr. Virgin has verbally abused and disparaged Mrs. Virgin during the separation. He has in the past physically abused Mrs. Virgin, grabbing her by the throat, pushing her to the floor, and screaming and cursing at her.

The court determined that joint custody was not an option in part because, "[t]aken as a whole, the evidence shows that Mr. Virgin was a domineering husband and an uncommunicative, obstructive, and angry person during the parties' separation."

The trial court also considered which parent would best facilitate visitation given Kathey's probable move to Colorado:

> Mrs. Virgin plans to move to Colorado in the summer of this year with the children. If she does so, it is likely the ability of the parties to cooperate and communicate will probably worsen. Mr. Virgin, were he to receive an award of sole or primary custo-

---

12. *See* Part III.F.2.

13. *Bird v. Starkey*, 914 P.2d 1246, 1249 n. 4 (Alaska 1996).

14. *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999).

15. *Julsen v. Julsen*, 741 P.2d 642, 649 n. 10 (Alaska 1987).

dy, would be less likely to encourage an open and loving and respectful relationship between the children and Mrs. Virgin than would Mrs. Virgin....

■ Joseph contends that a remand is necessary because the trial court failed to make findings on two statutory factors: the children's custody preferences and whether staying with Joseph in Glennallen would promote stability and continuity in the children's lives.[16] But our previous decisions establish that the trial court need not refer to all of the statutory factors in explaining its custody decision.[17] It must only discuss "those factors that it considers actually relevant in light of the evidence presented."[18] In other words, "[e]xpress mention of each factor is not required."[19] And in this case, the trial judge's decision need not have specifically referred to the children's preferences or the need for stability because those factors were not disputed or independently relevant.

■ Nor does Rule 52(a) "effectively impose[ ] a memorialization requirement" as the dissent alleges.[20] This court has never held that Rule 52(a) requires explicit findings for each of the statutory factors in AS 25.24.150(c). On the contrary, we have consistently stated that courts need not memorialize their findings for each given factor. Where there is "no substantive dispute" about a certain factor, the court need not specifically address it.[21]

The issue of children's preferences was never squarely raised at trial. Neither Kathey nor Joseph presented any evidence or argument in relation to the children's preferences. Joseph's trial brief only mentioned in passing the issue of the children's prefer-

ences as part of a complete list of all the AS 25.24.150(c) factors. And Joseph's attorney did not mention the children's preferences in her closing argument at trial. Indeed, Joseph's appellate brief contains only one sentence of argument on this point: "Nowhere in the record is there any evidence the trial court considered any of the three children be given a preference of placement." Joseph does not develop this argument, and he does not argue that the question was a relevant and disputed issue at trial.

Moreover, during the testimony at trial, the issue of the children's wishes was disputed exclusively in the context of determining whether Joseph had been manipulating the children by bribing or scaring them into staying in Glennallen with him. Kathey claimed at trial that Joseph "will go to any lengths in which to scare [the children] to make them believe that there apparently [are] no nice people Outside, that there will be nothing for them in [Colorado]." When asked by his attorney whether he had bribed Joanna into staying, Joseph answered: "I did not.... She asked me, she says if I stayed, would you build me a barn and I said I would." One question later, when asked about his son, Tyler, Joseph acknowledged a negative statement he had made to Tyler about Colorado:

> I went up and I asked him, I said did mom talk to you about Colorado. And he said, yeah. He said—he said there would be some neat things to do there and he said that—I said one thing you wouldn't want to be caught in is a blizzard, you know. And he said that wouldn't be fun and I

---

16. The dissent similarly argues that the trial court abused its discretion by not explicitly addressing these factors. *See* Dissent at 1051.

17. *See Park*, 986 P.2d at 207 (stating that "[w]hile a court determining custody must always consider each of these statutory factors, it need not refer to all of them in explaining its custody decision"); *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137–39 (Alaska 1997) (noting no error in trial court's failure to expressly address those factors not disputed by the parties and those not favoring the parent to whom the court denied custody); *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997) (holding that "[w]hile trial courts are encouraged to state all

findings in their written orders, they are not required to do so as long as the basis for their decisions is clear from the record and thus susceptible to review").

18. *Park*, 986 P.2d at 207 (citing *Borchgrevink*, 941 P.2d at 138–39).

19. *Id.* (citing *Borchgrevink* at 139–140, *Duffus*, 932 P.2d at 779).

20. Dissent at 1051.

21. *Borchgrevink* at 138.

said, yes. And I said—I said do you want to go to Colorado and he cried and said no. And Joseph admitted challenging Joanna about her desire to move to Colorado, telling her, "it's a state that you have not even seen or been to."

Based on this testimony, the trial judge found that Joseph had "told the children a number of negative things" about Colorado and had "explained to the children about his finances in an effort to enlist their aid or to convince them they should not go to Colorado with their mother." The trial judge clearly considered and weighed the testimony at trial. That the trial court addressed the preference issue in the context of discussing whether Joseph's behavior was manipulative does not suggest that the trial judge failed to consider the preferences. Rather, it naturally reflects the manner and context in which the issue was disputed at trial.

Based on this consideration, the court need not have made a separate, explicit finding on the issue of the children's preferences. Doing so would not have assisted that court in making a proper decision, nor would it have assisted this court in reviewing the decision on appeal.[22] "Mere recital of the statutory language helps no one."[23] This court should not require the Virgins to endure yet more contentious litigation when the trial court's findings persuade us that the custody determination was not in error.

We also disagree with Joseph's contention that the trial court failed to consider the statutory factor of stability and continuity. Joseph presented the testimony of his parents at trial to support his position that the children had bonded with their relatives in Glennallen. But the paternal grandparents testified that they lived forty-eight miles away from the Virgins' home in Glennallen and that their interaction with the children before the Virgins' separation was primarily limited to some weekends and birthdays and holidays. In light of the other problems that the trial judge identified with the children staying in Glennallen with Joseph, it is not surprising that the trial court did not specifically mention the children's familial ties to Glennallen in its findings.

Moreover, Joseph did not dispute testimony tending to show that the children would have more stability and continuity with Kathey in Colorado. Indeed, Joseph acknowledged that Kathey had been the primary caretaker for the children throughout the course of the marriage. Joseph also admitted at trial that "maybe there's better schools out there [in Colorado], maybe there's some horse activities out there or possibly some sport activities like hockey." Other than his own statements to the children, which the trial court found to be manipulative, Joseph presented no evidence to the trial judge that the Colorado move would be detrimental to the children's stability. To the extent that stability and continuity are factors in this case, they weigh in favor of the trial court's decision to grant custody to Kathey and are not a reason to remand the case for further findings. And stability and continuity of care for the children certainly will not benefit from remanding this case and forcing the children to endure further litigation between their parents.

Joseph's final argument as to why we should remand for redetermination of custody is that the trial court did not make an "ultimate finding" that giving sole custody to Kathey was in the best interests of the children. But in *Borchgrevink*[24] we noted that such a "wrap-up" finding, though ideal, was not necessary:

We prefer that superior courts specifically address the statutory factors detailed in AS 25.24.150(c), and make explicit "ultimate" findings that the best interests of the children require the custodial disposition reached. Detailed findings clearly advance the purposes identified by the dissent.... Nevertheless, the findings here were not so inadequate that they require

---

22. *See McDanold v. McDanold,* 718 P.2d 467, 470 (Alaska 1986) ("Facts which are either uncontested or irrelevant would not assist this court in assessing the propriety of an award.").

23. *Id.*

24. 941 P.2d 132.

that the judgment be vacated and the case remanded.[25]

The trial court's findings in *Borchgrevink* did not contain such "ultimate" findings on the best interests of the children.[26]

The dissent states that it is "uncomfortable" with "assuming" that the superior court found the children's best interests supported the award of custody to Kathey.[27] But given the trial court's findings that Joseph was a "domineering husband and an uncommunicative, obstructive, and angry person," and that he was also physically abusive, we need not "assume" anything. We can logically conclude that the court found that awarding Kathey custody was in the children's best interests.

Moreover, the dissent's only support for its proposition that the trial court must make an "ultimate" finding is the *Borchgrevink* dissent.[28] But, as noted above, the *majority* in *Borchgrevink* stated that it is not necessary to make an explicit "wrap-up" finding.[29] In *Borchgrevink* we held that, although the trial court only "implicitly" found that the children's best interests required their placement with their mother, its findings were "adequate to reveal its reasoning process."[30] Similarly here, the trial court's findings that Joseph was "hostile," "obstructive," and physically abusive are adequate to reveal its reasoning process. A rule requiring the trial court to make a wrap-up finding—in light of such thorough and unequivocal factual findings—would unjustifiably elevate form over substance.

Although the dissent asserts otherwise, its suggestion that courts memorialize findings on each and every factor essentially imposes a "tallying" requirement.[31] This court already rejected such a requirement in *Julsen* when we stated that custody determinations should not be overturned "merely because a judge fails to tally the statutory factors like hits, runs, and errors in a box score."[32] We should not depart from the *Julsen* decision by requiring a "memorialization"[33] of neutral or irrelevant factors when children's lives are at stake. The trial judge in this case wrote a thoughtful and well-reasoned nine-page decision that clearly outlined the reasons for granting custody to Kathey. Although courts must consider the factors that are pertinent to the case, they need not make express findings on all the statutory factors.[34] Our duty is to determine whether the court made a *sound decision;* not whether it committed some "technical foul."[35] Based on its thorough analysis of the relevant factors, we conclude that the court made a sound decision.

Finally, the dissent advocates altering our current approach[36] in favor of a "more rigorous approach."[37] But the dissent's suggestion that we *alter* our current approach confirms that this decision comports with our prior case law. Moreover, searching for errors and remanding any time the trial court fails to make explicit findings for each factor would not further children's best interests. As long as the trial court addresses the "pertinent and potentially determinative factors"[38] and "reveals its reasoning,"[39] its

---

25. *Id.* at 139–40.

26. *See id.* at 135–37. The *Borchgrevink* trial court's only explicit reference to the best interests of the children was in its findings of fact, and then only to make the general point that the best interests of the children require that one parent have legal and physical custody subject to liberal visitation by the non-custodial parent. *See id.* at 136.

27. Dissent at 1054.

28. Dissent at 1051.

29. 941 P.2d at 137.

30. *Id.*

31. Dissent at 1052.

32. *Julsen,* 741 P.2d at 649 n. 10.

33. Dissent at 1052.

34. *See Julsen,* 741 P.2d at 649 n. 10.

35. *Id.*

36. *See* Dissent at 1052.

37. Dissent at 1053.

38. *Borchgrevink,* 941 P.2d at 138; *see also Julsen,* 741 P.2d at 649 n. 10.

39. *Borchgrevink,* 941 P.2d at 137; *see also Duffus,* 932 P.2d at 779.

**1048**

findings will be adequate. We stated in *Park* that courts will not have erred when the "substantive information expressed in the findings clearly indicate[s] the steps that the trial court ... followed, and, therefore, provide[s] an adequate basis for appellate review."[40] Our current approach promotes finality and certainty, both of which are "critical to the child's emotional welfare."[41] We see no reason to depart from our current approach in favor of the dissenting position in *Borchgrevink.*

### 2. Factual findings

Joseph contends that the court abused its discretion by relying on two clearly erroneous factual findings in making the custody award: (1) that he had refused to make the house mortgage payments following entrance of the interim order, and (2) that he had physically abused Kathey. After reviewing the record, we conclude that the court did not err; the record supports both findings.

Both Kathey and Joseph testified that Joseph refused to make the November house payment following entry of the interim order on October 28, 1997. There was no evidence to the contrary.[42]

Kathey also testified that Joseph physically abused her; Joseph's denials do not render the court's finding clearly erroneous. Trial courts have the discretion to accept the testimony of one witness over another;[43] the court here reasonably could have chosen to credit Kathey's testimony over Joseph's.

We therefore affirm the superior court's factual findings.

### E. Visitation

The superior court, accepting Kathey's testimony that she and the children would move to Colorado following the divorce, granted Joseph eight weeks of summer visitation and alternate Christmas and Spring Break vacation periods. It noted, however, that if Kathey remained in Glennallen, Joseph's visitation should be "open and reasonable."

We are unpersuaded by Joseph's argument that the visitation order is too vague to be sustained upon review.[44] The order's only ambiguity relates to the visitation scheme applicable if Kathey remains in Glennallen. Because it is unlikely that the parties will have to rely on this provision, its ambiguity is not fatal. If Kathey stays in Glennallen, Joseph may ask the superior court to clarify its order.

Joseph also alleges that the court abused its discretion by failing to consider whether he could pay the children's transportation costs. We disagree; the court's consideration of this factor is implicit in its extensive findings of fact regarding the disparity in the parties' incomes.

### F. Division of Marital Property

The court approved of the parties' agreement for dividing their marital property. Because Kathey was planning to leave Alaska, the court awarded Joseph possession of the marital home. But it granted each party a fifty percent share of equity in the marital home and required Joseph to buy out Kathey's share within six months of the date of the divorce.

### 1. Adequacy of factual findings

Joseph alleges that the court failed to consider Joseph's future needs and

**40.** *Park,* 986 P.2d at 210.

**41.** *Gratrix v. Gratrix,* 652 P.2d 76, 82–83 (Alaska 1982).

**42.** The fact that Joseph *later* reimbursed Kathey for the November house payment does not contradict the court's finding.

**43.** *See Davila v. Davila,* 876 P.2d 1089, 1092 (Alaska 1994) (quoting *Parker v. Northern Mixing Co.,* 756 P.2d 881, 892 (Alaska 1988)) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

**44.** *See Long v. Long,* 816 P.2d 145, 157 (Alaska 1991) (holding that "uncertainty [regarding amount of visitation ordered] is fatal to the validity of [a trial] court's visitation ... award[]").

his ability to meet those needs when it made the property division. Joseph's argument is without merit. A trial court need not make findings on all of the factors relevant to a property division; it is only required to make factual findings sufficient to indicate the basis of its division.[45] The court's factual findings indicate that it based its decision on the following factors: the marriage's length; the parties' earning abilities; and the parties' respective ages and health. This is sufficient to support the court's property division.

### 2. Costs-of-sale deduction

■ Joseph also contends that the court abused its discretion by failing to deduct from Kathey's equity share in the marital home one-half of the costs associated with its sale. The costs of a sale may be deducted from a spouse's share of an asset if there is "evidence in the record (1) showing that the party who will receive the asset intends an imminent sale, and (2) supporting the estimated costs of sale." [46] Joseph did not satisfy this test.

Joseph testified that if he received the marital home "[i]t probably should be sold." This evidence does not show that he intended to sell the marital home or that a sale was "imminent." Moreover, Joseph does not refer us to any evidence about the costs of sale. It therefore was not error to deny the deduction.

### G. Child Support

### 1. Joseph's earning capacity

■ In calculating Joseph's child support obligation, the superior court set his income at $72,000 and required him to pay thirty-three percent of that amount, i.e., $1,980 per month.

Joseph argues that the court erred because it failed to show how it arrived at the $72,000 figure. He contends that the court should have accepted testimony that his income would decline substantially in the future. At trial, the operations manager for Joseph's employer testified that the company intended to reduce overtime during that year. Joseph implies that overtime constituted a significant portion of his income in the past.

In determining earning capacity under Alaska Civil Rule 90.3, a trial court has the discretion to choose "the best indicator of ... future earning capacity" based on the evidence before it.[47] Joseph does not dispute the court's finding that his income exceeded $72,000 for the past three years. The court did not abuse its discretion by relying on evidence of Joseph's past stream of income; it was not obliged to credit the speculative testimony of the operations manager and find that Joseph's income would probably decline.

In addition, Joseph may petition the superior court for modification of child support if his income later falls below $72,000 and he cannot meet his support obligations or there is a change of circumstance satisfying Rule 90.3(h).[48]

### 2. Consideration of Kathey's income

■ Joseph also alleges that the court failed to calculate and take into account Kathey's adjusted and gross income when it made the child support award. This argument is without merit. When one parent has primary custody, i.e., custody more than seventy percent of the year, child support is based only on the non-custodial parent's income.[49] Kathey has primary custody; at most, the children will be in Joseph's custody about seventeen percent of the year.[50]

---

**45.** See Burcell v. Burcell, 713 P.2d 802, 805 (Alaska 1986).

**46.** McDaniel v. McDaniel, 829 P.2d 303, 307 (Alaska 1992).

**47.** Coghill v. Coghill, 836 P.2d 921, 926 (Alaska 1992).

**48.** See Kowalski v. Kowalski, 806 P.2d 1368, 1372 n. 6 (Alaska 1991).

**49.** See Alaska R. Civ. P. 90.3(a).

**50.** Assuming Kathey moves to Colorado, the children will visit with Joseph eight weeks each summer and alternate Christmas and Spring Break vacation periods. At a maximum, visitation will be nine weeks a year.

### 3. Reduction for visitation expenses

Joseph also argues that, because the visitation order granted him eight consecutive weeks of visitation, the superior court should have made specific findings explaining why it did not reduce his child support payments during his extended summer visitation. We disagree.

 Rule 90.3(a)(3) allows the trial court to "reduce child support payments up to 50% for any period in which that parent has extended visitation of over 27 consecutive days." The decision whether to credit the obligor parent's support obligation for these expenses lies within the trial court's discretion.[51] Notwithstanding this broad discretion, a trial court should consider whether to grant a credit when "urged by a party where a sufficient factual predicate is established." [52]

Here, not only did Joseph fail to "urge" the trial court to grant him a credit pursuant to Rule 90.3(a)(3), he made no request whatsoever for the credit. He made no mention of the visitation reduction in either his submissions to the trial court while the court's determination of child support was still pending or in his post-trial motions for reconsideration. In fact, his limited appellate argument on this issue is made only in the context of his contention that he is unable to pay visitation transportation expenses: "Requiring Joseph to pay 100% of all transportation costs with no explanation why it denied reduction of child support during extended visitation is an abuse of discretion." Because Joseph raises the issue for the first time on appeal, we decline to consider it.[53]

---

**51.** See Renfro v. Renfro, 848 P.2d 830, 832 (Alaska 1993); see also Alaska R. Civ. P. 90.3 cmt. IV.B.

**52.** Renfro, 848 P.2d at 832.

**53.** See von Stauffenberg v. Committee for an Honest & Ethical Sch. Bd., 903 P.2d 1055, 1061 (Alaska 1995).

**54.** See Burrell v. Burrell, 537 P.2d 1, 7 (Alaska 1975).

**1.** AS 25.24.150(c) (1998) provides:

### H. Attorney's Fees and Costs

 The superior court awarded Kathey attorney's fees and costs totaling $8,000. An award of attorney's fees and costs in a divorce action is to be based on the parties' ability to pay.[54] Joseph complains that the superior court failed to consider the parties' abilities to pay their respective attorney's fees and costs. We disagree. As discussed above in the context of the child support award, the trial court made extensive factual findings regarding the parties' earning capacities. Joseph presents no evidence from the record that would cause us to doubt the trial court's findings in this respect. We therefore affirm the attorney's fees award.

## IV. CONCLUSION

We AFFIRM the superior court's interim order and the entirety of its findings of fact and conclusions of law.

EASTAUGH, Justice, with whom MATTHEWS, Chief Justice, joins, dissenting in part.

### 1. INTRODUCTION

Because I disagree with this court's resolution of the custody issue, I dissent from that portion of its opinion. I would remand because the record does not establish that the superior court made the findings the custody statute requires.

### 2. DISCUSSION

Alaska Statute 25.24.150(c) requires a superior court to consider eight enumerated factors in determining a child's best interests before awarding custody.[1]

> The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider
> (1) the physical, emotional, mental, religious, and social needs of the child;
> (2) the capability and desire of each parent to meet these needs;
> (3) the child's preference if the child is of sufficient age and capacity to form a preference;
> (4) the love and affection existing between the child and each parent;

Joseph argues that the superior court failed to consider two relevant statutory factors, the children's preferences and the desirability of maintaining stability and continuity in their lives. He also argues that the superior court did not make an ultimate finding that it is in the children's best interests that Kathey, rather than Joseph, be their sole custodian.

This court rejects those arguments. It does so after carefully reviewing both the record (to determine what statutory factors the parties disputed at trial) and the superior court's findings (to determine whether it explicitly or implicitly addressed particular statutory factors). In light of the issues and findings thus perceived, this court holds that the custody award was consistent with the children's best interests.[2]

I disagree with that approach for three reasons. First, it does not satisfy AS 25.24.150(c) and Alaska Civil Rule 52(a). Second, it rests on an implicit, but inappropriate, appellate assumption that the superior court either correctly resolved disputes about the two factors or determined that the factors were irrelevant. Important policy considerations should preclude such deferential treatment of custody awards. Third, even under the approach the court takes here, the facts require remand.

A. *Explicit Findings Are Needed to Satisfy Statute and Rule.*

Alaska Statute 25.24.150(c) imposes two mandatory duties on the superior court. It "shall determine custody in accordance with

the best interests of the child"; and in determining the child's best interests, it "shall consider" eight enumerated factors.[3] Because such cases are tried without juries, our procedural rules require a trial court to "find the facts specially and state separately its conclusions of law thereon." [4]

The statute mandates a two-part analysis. First, the trial court must find the extent to which each relevant statutory factor favors one parent or the other. Making these findings necessarily requires the trial court to determine the relevance of each statutory factor. Second, the trial court must weigh the relevant factors and make a best-interests finding before awarding custody.

The statute does not state that the trial court must memorialize its analysis and findings at each step. But because the trial court can satisfy the statute only by making findings of fact and conclusions of law, Civil Rule 52(a) effectively imposes a memorialization requirement because it demands that the trial court "find the facts specially" and "state separately" its legal conclusions.[5] I believe that this demand requires trial courts to memorialize their custody findings and conclusions in writing or by minute order recorded electronically.

As Chief Justice Matthews observed in his dissent in *Borchgrevink v. Borchgrevink,*[6] the statute and rule collectively require the trial court to make both "integrative" findings and an "ultimate" finding.[7] Chief Justice Matthews there identified four purposes served by a requirement that trial courts make find-

---

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

**2.** *See* Op. at 1047.

**3.** *See* AS 25.24.150(c).

**4.** Alaska R. Civ. P. 52(a).

**5.** *See* Alaska R. Civ. P. 52(a).

**6.** *Borchgrevink v. Borchgrevink,* 941 P.2d 132 (Alaska 1997).

**7.** *See id.* at 142. I authored the court's opinion from which Chief Justice Matthews dissented. But our opinion in *Borchgrevink* did not reject his reasoning concerning the purposes of integrative and ultimate findings. It instead concluded that those purposes had been served in that case, that the superior court had considered the relevant factors, and that its integrative findings were sufficient. *Id.* at 141.

ings in judge-tried cases. "This requirement (1) 'aids the trial judge's analytical process'; (2) 'may be relevant for collateral estoppel purposes'; (3) 'aids the appellate court on review'; and (4) enables 'the defeated party to determine whether the case presents a question worthy of consideration by the appellate court.' "[8] To these I would add that proper findings set a baseline of circumstances that permit comparison when the noncustodial parent claims that changed circumstances justify a change in custody.

For these and other reasons, I am now convinced that the statute can best be satisfied by requiring expressly memorialized findings and conclusions after the trial court determines the relevant statutory factors, resolves disputes concerning those factors, and makes the ultimate best-interests finding by weighing those factors.

The court argues that such a requirement would elevate form over substance.[9] And not long ago the court noted in dicta, "[w]e do not believe custody determinations should be overturned merely because a judge fails to tally the statutory factors like runs, hits and errors in a box score."[10] But I do not regard a requirement originating in this statute to be a mere formalism. Because a custody dispute is decidedly not a sporting event, because an appellate court cannot tally hits, runs, and errors, and because the best-interests determination ultimately turns on a complex weighing of statutory factors having unequal values in a given case, the trial court must explain what it did and how it did it.

Requiring a memorialization would demand nothing more than Civil Rule 52(a) now requires. Given this court's presumption that the trial court has engaged in the analysis the statute demands, memorialization will add little extra time or effort. If this court's presumption is incorrect, the memorialization requirement will encourage the proper statu-

tory analysis. The trial court can easily preserve its findings in an oral minute order. The benefits will far outweigh any additional burden.

In light of the statute and Rule 52(a), I conclude that we should alter our current approach in reviewing such cases. It is one thing to review an appellate record to determine whether the superior court has made the appropriate findings where none appear there plainly.[11] But we should no longer sift through appellate records to determine which statutory factors seem to have been irrelevant in particular cases and which factors the parties have chosen not to dispute.[12] Nor should we attempt to discern from the record whether particular findings were meant to dispose of statutory factors the trial court failed to discuss explicitly.[13] Our current practice does not remedy a failure to make findings and memorialize them in the record. It does not satisfy the first, second, and fourth purposes Chief Justice Matthews identified in *Borchgrevink*.[14] Even as to the third purpose, careful scrutiny of the record is a poor substitute for the assistance that express findings would provide during appellate review. A trial court's failure to memorialize its reasoning and findings gravely impedes appellate review and impairs its accuracy. And if a change of circumstances is alleged, reconstructing the circumstances the trial court originally considered when it first awarded custody is neither effective nor efficient.

B. *The Drawbacks of Our Current Approach Outweigh Any Possible Benefits.*

This brings me to my second concern. We are a court of review. We do not try or retry fact disputes committed to the trial court. To review custody awards on appeal,

---

**8.** *Id.* at 142 (Matthews, J., dissenting) (quoting *In re D.C.*, 715 P.2d 1 (Alaska 1986); *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962); *Rogge v. Weaver*, 368 P.2d 810, 814 n. 7 (Alaska 1962)).

**9.** *See* Op. at 1047.

**10.** *Julsen v. Julsen*, 741 P.2d 642, 649 n. 10 (Alaska 1987).

**11.** *See, e.g., Duffus v. Duffus*, 932 P.2d 777, 779–80 (Alaska 1997).

**12.** *See Borchgrevink*, 941 P.2d at 140–41.

**13.** *See Park v. Park*, 986 P.2d 205, 206 (Alaska 1999).

**14.** *See Borchgrevink*, 941 P.2d at 142.

we need to know how the trial court ruled. When the trial court fails to address a statutory factor, is it because the court thought that factor irrelevant or because the court simply overlooked it? When the trial court awards custody without making an ultimate best-interests finding, has it applied the correct statutory standard? Has it weighed any factors not mentioned in its findings? If a factor is relevant and in dispute, did the trial court consider it in deciding the children's best interests when there is no indication what it considered? When the record is silent or ambiguous as to a given factor, this court's approach necessarily rests on an assumption of regularity, i.e., an assumption that the superior court did not overlook any factors and awarded custody based on the children's best interests.

In my view, it is not enough that it seems probable in a given case that the trial court reached a permissible result, because there can be more than one permissible result. And the outcome may hinge on a factor the trial court may have overlooked. When the trial court does not say what it did, we should not have to assume that it applied the correct statutory analysis and made a best-interests determination. Nor should the parties. A more rigorous approach will reassure parties (and appellate jurists) that the trial court engaged in the right analysis.

This reassurance should not be lightly ignored. It is important that the losing party have confidence that the trial court resolved the dispute on its merits, engaged in the right analytical process, and overlooked no relevant statutory factors. If the trial court makes no memorialized findings on specific factors or makes no memorialized best-interests finding, and does not explain why it does not, the losing party can fairly wonder whether justice was done. That party is not likely to be reassured by an appellate process that assumes that the trial court followed the correct process even though it is not clear what process the trial court followed.

This raises the related problem of possible appellate inaccuracy. I think that it is not adequate for us to resolve silence or ambiguity by scrutinizing the parties' trial court arguments. There are two reasons. First, the children themselves are rarely represented, and the parents' needs may not align with their children's best interests. The parents' failure to address pertinent factors cannot excuse a superior court's failure to consider those factors. Second, rarely is the record so unambiguous that we can definitively determine that the parents waived particular factors. Testimony and argument about custody often do not clearly separate one factor from another. Cases involving pro se parents are even more problematic because they are more likely to overlook relevant factors. Consequently, appellate records are often sufficiently unclear that reasonable jurists can permissibly draw different conclusions about the evidence, the parties' arguments, and what the trial court intended. Our approach, therefore, may cause us to draw inaccurate conclusions that do not reflect what the trial court really did.

Policy reasons should also foreclose our willingness to review the record to reconstruct the superior court's analysis. Our approach adversely affects the finality of custody awards by encouraging appeals on the avoidable issue of the adequacy of the findings. It increases litigation costs by creating avoidable appellate issues and exposes the parties to the expense and delay of remand if findings prove insufficient.[15] It decreases predictability because the appellate result turns on what a majority of this court, after examining the record, decides the trial court meant to do absent memorialized findings. It adversely affects consideration of custody modification motions because the baseline circumstances may have to be reconstructed. And if we misinterpret the record, and remand for a different result, we may interfere with what might have been an allowable exercise of trial court discretion.

It also interferes with resolving custody disputes expeditiously. Appeals in these cases are especially time-consuming, because our approach encourages each justice to engage in a fact-intensive review of the record, and often provokes separate opinions. Sepa-

**15.** *See Park,* 986 P.2d at 211.

1054

rate opinions were issued in *Park v. Park*,[16] *Duffus v. Duffus*,[17] and *Borchgrevink*.[18]

The resulting delays harm the parties. And the time individual justices spend reviewing the records in these cases trying to determine what the trial court must have intended delays our consideration of other worthwhile, but nonexpedited, appeals.

For these reasons, I feel parties will be better served if we follow the approach Chief Justice Matthews advocated in *Borchgrevink* and further require the trial court to memorialize its findings.

### C. *Even under the Current Approach, this Custody Dispute Should Be Remanded.*

But even under the approach the court follows here, I think remand is necessary. First, the superior court did not address the children's preferences although two children were arguably old enough to express preferences. The court seems to interpret the superior court's comments to indicate that it may have reasoned that the children's preferences would not have been reliable.[19] But that interpretation supposes that the superior court actually made an unreliability determination when it did not. This court also reasons that the issue was not really disputed at trial anyway.[20] Given the statutory mandate, I am not convinced that a failure of the parents to raise the preference issue should be determinative. But in any event, the issue was sufficiently raised here that the superior court should have memorialized any such findings. At least the trial court should have stated that the factor was not relevant, or that the children's preferences would have been unreliable, if that is what it indeed found.

This court also reads the record to suggest that the statutory stability and continuity factor was not in real dispute, and that in any event the evidence on this factor favored Kathey.[21] But the initial relevance determination is best made by the trial court because it is most familiar with the evidence and the parties' arguments. Imposing that duty aids the analytical process that the trial court must follow anyway. Likewise, it is for the trial court to make findings about the evidence, and I do not feel comfortable reasoning that the facts could only be read to favor Kathey on this issue.

I am also uncomfortable with assuming that the disputed factors favored Kathey and that the other factors were at best neutral, and that the superior court must have found the children's best interests before awarding Kathey custody.[22] It is circular to reason that the court applied the right analysis because the factors justified the award made. If only one outcome were possible, perhaps that would be an appropriate way to reason. But even if all factors but one favor one parent, in a given case that one factor may outweigh the others.

### 3. *CONCLUSION*

The court has engaged in an admirable but time-consuming attempt to determine whether the superior court conducted the analysis the legislature requires. I think it illustrates why we must change the way we review such disputes. But even applying the approach we have followed in the recent past, I would reverse and remand the custody issue in this case for consideration of the preference and continuity factors and for memorialization of the necessary findings.

---

16. 986 P.2d at 211.

17. 932 P.2d at 781.

18. 941 P.2d at 141.

19. *See* Op. at 1045–1046.

20. *See* Op. at 1045–1046.

21. *See* Op. at 1046–1047.

22. *See* Op. at 1046–1047.